[No. S043692. Dec. 21, 1995.]

RAYMOND L. BROSTERHOUS et al., Plaintiffs and Appellants, v. THE STATE BAR OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Ronald A. Zumbrun, Anthony T. Caso and Deborah J. La Fetra for Plaintiffs and Appellants.

Diane C. Yu, Lawrence C. Yee, Starr Babcock, Richard J. Zanassi, Dina E. Goldman and Robert M. Sweet for Defendants and Respondents.

**OPINION**

**BAXTER, J.**—Pursuant to the decision of the United States Supreme Court in *Keller* v. *State Bar of California* (1990) 496 U.S. 1 [110 L.Ed.2d 1, 110 S.Ct. 2228], this court and the State Bar of California (State Bar) established procedures by which a member's challenge to the State Bar's annual calculation of the amount of compulsory membership dues to be used for "political activities" is to be resolved by arbitration. A member who objects to use of that proportional part of his or her dues may then deduct the sum from the dues payment.

The question presented in this case is whether a member dissatisfied with the arbitral decision, and claiming that payment of the required portion of dues violates the member's First Amendment rights to freedom of speech and association, may bring an action for an injunction and damages under 42 United States Code section 1983 (section 1983), a federal civil rights act.[1] The Court of Appeal held that United States Supreme Court precedent construing section 1983 and the congressional intent underlying it preclude a procedure which limits the claimant to an arbitral remedy.

---

[1] Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

We agree and affirm the judgment of the Court of Appeal.

Arbitration of members' objections to the manner in which the State Bar calculates the portion of annual dues used for political and ideological purposes is not a permissible substitute for an action for damages and injunction authorized by section 1983. Limiting members to judicial review of the arbitration decision would violate congressional intent that a section 1983 cause of action be available even to persons who have arbitrated a claim that mandatory dues payments are being used for such purposes in violation of their First Amendment rights to freedom of speech and association. We also conclude that a section 1983 action may be brought regardless of whether the member has sought judicial review of the arbitrator's decision.

I

*Background*

In 1990, the United States Supreme Court upheld a claim by attorney members of the State Bar that the use of funds derived from compulsory dues to finance political and ideological activities of the State Bar with which the members disagree violates the members' First Amendment right of free speech if those expenditures are not reasonably and necessarily incurred for the purpose of regulating the legal profession or improving the quality of legal services. (*Keller* v. *State Bar of California, supra,* 496 U.S. 1, 14 [110 L.Ed.2d 1, 14] (*Keller*).) The court suggested adoption of procedures similar to those the court had outlined in *Teachers* v. *Hudson* (1986) 475 U.S. 292 [89 L.Ed.2d 232, 106 S.Ct. 1066] (*Hudson*), by which the amount of each member's dues attributable to political and ideological activity is determined and ultimately forgiven, but did not rule out the possible adequacy of alternative procedures.

*Hudson* involved a challenge to the procedures by which a union in an agency shop determined which activities were germane to the union's duties as a collective bargaining agent for the employees and those activities for which dissenting employees could not be compelled to contribute, and the procedure by which the union responded to nonmember employee objections to that determination. The court first reaffirmed its earlier holdings in *Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209 [52 L.Ed.2d 261, 97 S.Ct. 1782] and *Ellis* v. *Railway Clerks* (1984) 466 U.S. 435 [80 L.Ed.2d 428, 104 S.Ct. 1883], in which it had laid down the rule that a union may not,

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"consistently with the Constitution, collect from dissenting employees any sums for the support of ideological causes not germane to its duties as collective-bargaining agent." (*Ellis* v. *Railway Clerks, supra,* 466 U.S. at p. 447 [80 L.Ed.2d at p. 441].) In *Keller,* the court had extended that rule to the California integrated State Bar in which membership by all attorneys. licensed to practice in this state is compulsory.

*Hudson* emphasized that while an agency shop was constitutionally permissible, protection of the nonunion employees' First Amendment rights required procedures which are carefully tailored to avoid unnecessary infringement on their associational rights, and which gave the employees "a fair opportunity to identify the impact of the governmental action on their interests and to assert a meritorious First Amendment claim." (*Hudson, supra,* 475 U.S. at p. 303 [89 L.Ed.2d at p. 245].) The court then held: "[T]he constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." (*Id.* at p. 310 [89 L.Ed.2d at p. 249].)

Rejecting an argument that the requirement of a procedure for administrative challenge was unnecessary, as ordinary judicial remedies were sufficient, the court also said: "[W]e presume that the courts remain available as the ultimate protectors of constitutional rights." (*Hudson, supra,* 475 U.S. at p. 308, fn. 20 [89 L.Ed.2d at p. 248].)

Following *Keller,* the State Bar added article IA to the State Bar Rules and Regulations. That article established procedures which the State Bar believed would satisfy its obligation to advise members of the basis on which it calculated the amount of member dues devoted to activities regulating the legal profession and improving the quality of legal services (the *Abood* amount) and to provide prompt resolution of members' challenges to that calculation by a neutral decisionmaker.

Under the provisions of article IA, a member of the State Bar may deduct from the member's annual membership fee the member's share of those "nonchargeable expenses" the member does not wish to support. "Nonchargeable expenses" are defined in section 1B as "expenses incurred for activities having political or ideological coloration which are not reasonably related to the advancement of the purposes and goals of the State Bar to regulate the profession or improve the quality of legal services." (State Bar Rules & Regs., art. IA, § 1B.) In advance of that election the State Bar provides members with an independently audited statement which identifies the major categories of expenses deemed chargeable and nonchargeable.

Section 3 of article IA establishes an appeal procedure under which a member who disagrees with the State Bar's categorizing of any activity as chargeable to the annual membership fee and the determination of the advance reduction may serve and file an individual written objection with the State Bar. The State Bar must then place the amount of the challenged fee in escrow and consider the challenge at its next regularly scheduled meeting after the deadline for receipt of challenges. The Board of Governors may remit any part of the challenged fee and/or refer the challenge to arbitration. When arbitration is ordered the member and the State Bar may select a mutually agreed-on impartial arbitrator who will hear and decide the challenge (or challenges if more than one member's challenges are consolidated). "The arbitration decision shall be binding as to the challenger(s) and the State Bar, subject to such appropriate review as determined by the Supreme Court." (State Bar Rules & Regs., art. IA, § 3E.)

For the year 1991, the State Bar calculated the nonchargeable portion of the annual $478 regular membership fee as $3, based on audited financial statements for expenditures in 1989, the most recent available. The State Bar consolidated the challenges and a single, 14-day hearing was held before an arbitrator. The arbitrator required refund of an additional $4.36, plus interest, to the challengers. Members who did not file challenges received only the $3 reduction.

Plaintiffs, 46 members of the State Bar, then filed this action in the Sacramento County Superior Court, naming the State Bar and the individual members of the Board of Governors who allegedly were responsible for determining the chargeable and nonchargeable expenses, as defendants. The complaint sought declaratory relief and money damages, and alleged that even after the dues reduction allowed by the arbitrator, defendants had compelled all attorneys to pay for expenditures related to political and ideological activities of the State Bar.[2]

Plaintiffs asserted that compelling them to support those activities with compelled membership fees violated their rights to freedom of speech and

---

[2]Those activities were described as research supporting legislative lobbying; bar relations related to promotion of the interests of certain lawyers based on race, ethnicity, and gender; support services for voluntary, politically active bar associations; the California Young Lawyers Association, a mandatory membership subgroup of the State Bar; the Conference of Delegates, which debates subjects for legislative lobbying; preparation of articles about the State Bar political activities; public relations activities; public meetings which provide political advocacy training for leadership of voluntary, politically active bar associations; support provided to organizations which promote social change and subsidization of a bar subsection engaged in legislative advocacy; assistance to organizations promoting social change; lobbying; and the expenses of the Board of Governors and other administrative expenses for carrying out the State Bar's political and ideological activities.

Plaintiffs also alleged that by including nondues revenues in calculating expenditures, the State Bar had understated the prorated share of political expenses.

association in violation of the First Amendment to the United States Constitution, section 1983, and article I, sections 2 and 3 of the California Constitution.

The State Bar demurred to the complaint on the grounds that: (1) it failed to state a cause of action; (2) because the plaintiffs were bound by the arbitration decision, they were limited to a petition to vacate the arbitrator's decision brought pursuant to Code of Civil Procedure section 1285 et seq.; and (3) article IA of the State Bar Rules and Regulations affords plaintiffs an adequate remedy at law and prevents irreparable injury. Over plaintiffs' opposition, the trial court sustained defendants' demurrer without leave to amend and dismissed the action with prejudice. In a minute order incorporated into that judgment, the superior court ruled that plaintiffs were not entitled to judicial review of the specific costs of the State Bar and whether they are proper under *Keller*. The court reasoned that the Legislature had delegated to the State Bar the authority to adopt rules to comply with *Keller*. The rules met the *Keller* requirements and afforded due process, notwithstanding the lack of consent to the procedures they specified.

In its opinion reversing the superior court judgment, the Court of Appeal assumed that the procedure by which *Keller* claims are resolved in arbitration is analogous to labor arbitration. Relying on decisions of the United States Supreme Court which hold that arbitration conducted pursuant to a collective bargaining agreement does not preclude a separate legal action by the employee to vindicate violation of the employee's statutory rights, the Court of Appeal held that members of the State Bar are also entitled to bring a section 1983 action to vindicate their rights. The State Bar argues that the decisions on which the Court of Appeal relied are not controlling; that even if a section 1983 cause of action can be stated, there is no right to a trial de novo; and that, if a section 1983 trial must be held, because the procedures it has established meet the *Hudson/Keller* requirements, the decision of the arbitrator must be given significant weight in subsequent litigation of the *Keller* claims.

The State Bar states its argument in this court variously as: (1) an issue going to "the appropriate level of judicial review of subsequent litigation of *Keller* claims"; (2) a question addressing whether objectors must directly challenge the arbitration decision by seeking judicial review of that decision or are entitled to an evidentiary trial de novo which ignores the arbitration record; and (3) whether the availability of judicial review under Code of

Civil Procedure section 1094.5 or section 1285 precludes a section 1983 action.[3]

Inherent in the State Bar's arguments is an assumption that because the arbitration proceedings it has established meet the due process requirements established in *Hudson* for determination of disputes over the *Abood* amount, and because the Supreme Court recommended adoption of internal administrative procedures for deciding such questions, the State Bar procedures afford an adequate remedy for any violation of plaintiffs' constitutional rights.

The questions posed by the State Bar's arguments are, therefore: (1) whether the availability of the State Bar administrative remedy supplants and thereby precludes a section 1983 action, and (2) if a section 1983 action is available, whether exhaustion of state remedies, including judicial review of the arbitrator's decision, may be required as a prerequisite to a section 1983 action.

## II

### *Discussion*

A. *Adequacy of State Bar arbitration as a remedy.*

 The State Bar argues that, because plaintiffs have an available state administrative remedy and have arbitrated their claim, they may not litigate the issue of the *Abood* amount anew in a section 1983 action. It argues in effect that the arbitration is entitled to res judicata effect.

---

[3]Summarizing its holding that the availability of arbitration of plaintiffs' claim did not foreclose their section 1983 action, the Court of Appeal explained that even though the State Bar arbitration procedure had been devised to adjudicate First Amendment claims, those procedures did not preclude an independent section 1983 action in which the findings of the arbitrator could, but need not, be considered by the court. Apparently addressing that statement, the State Bar argues that, if a trial de novo is required in the section 1983 action, the court must give "significant weight" to the arbitration decision in the section 1983 action. The State Bar complains that the Court of Appeal did not address the question of the weight to be given the arbitrator's decision.

The State Bar overlooks the fact that this question is not properly before the court at this stage of the litigation. The question of what force the findings of the arbitrator should have in the section 1983 action is not one raised by the State Bar's demurrer to plaintiffs' complaint. It is hornbook law that a demurrer challenges only defects that appear on the face of the pleading. (Code Civ. Proc., § 430.30, subd. (a); see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 894, p. 333 et seq.) The evidentiary value of the arbitrator's decision or of the evidence received at the prior arbitration of the plaintiffs' claimed violation of their First Amendment rights is not an issue that arises on a demurrer to the complaint. Whether the arbitrator's decision is a basis for claim preclusion, even though arbitration under the State Bar's rules is not voluntary, and what weight, if any, should be given to the arbitrator's findings, are questions that must be resolved at a later stage of the proceedings.

■ The defense of res judicata is generally raised in an answer to the complaint or by motion for summary judgment. However, if all of the facts necessary to establish that an action is barred on res judicata grounds appear on the face of the complaint, the complaint is subject to demurrer. (*Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 152 [168 P.2d 972].) ■ Plaintiffs alleged the prior arbitration in their complaint, asserting that they did not agree to the arbitration or participate in the selection of the arbitrator, and describing the arbitration as a "hearing" in which they were forced to participate, and at which they were not allowed discovery rights on several issues.[4] An initial problem with the State Bar's argument therefore is that the complaint does not allege all of the facts necessary to establish the criteria for application of the defense of res judicata or claim preclusion.

■ This court has indicated that a final decision in an administrative adjudication may be given res judicata or collateral estoppel effect in a subsequent judicial proceeding if the issues were identical in the administrative proceeding. (*People* v. *Sims* (1982) 32 Cal.3d 468, 485 [186 Cal.Rptr. 77, 651 P.2d 321].) It may do so if the agency was acting in a judicial capacity and resolved disputed issues of fact which the parties had adequate opportunity to litigate. (*Id.* at p. 479). ■ Assuming arguendo that the State Bar arbitration was equivalent to an administrative adjudication, however, the complaint in this action does not establish on its face that the issues in the State Bar arbitration were identical, or were issues that plaintiffs had an adequate opportunity to litigate in the arbitration.

In an attempt to overcome this procedural bar to consideration of the res judicata defense on a demurrer, the State Bar asks this court to take judicial notice of the entire record of the arbitration proceeding. It concedes that the record is not a court record, but argues that judicial notice may be taken of the arbitration record as a quasi-judicial proceeding under Evidence Code section 452, subdivisions (d) and (h). Subdivision (d) permits the court to take judicial notice of the record of a court, however, and the State Bar offers no authority for expanding the statutory authorization to include the records of arbitration proceedings that are not conducted as part of a judicial action. Subdivision (h) authorizes judicial notice of "[f]acts and propositions

---

[4]Paragraph 6 of the first amended complaint alleges: "Attorneys who signed to challenge defendant's calculation (based on the meager information provided in Exhibit 1) were forced to participate in a single consolidated hearing for all challengers before a hearing officer selected by the Bar. This hearing covered 14 days throughout the Summer of 1991 and was held variously in San Francisco and Los Angeles. Challengers were not allowed discovery rights in this hearing on a number of issues including the crucial issue of the Bar's ex parte contacts with the hearing officer prior to the hearing. Not surprisingly, the Bar-chosen hearing officer rendered a decision largely upholding the position of defendants but requiring the Bar to refund an additional $4.36, plus interest, to the challengers."

that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

Plaintiffs oppose this request for judicial notice. ■ Because the State Bar is an administrative arm of the court only in its admissions and disciplinary functions (*Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 557 [216 Cal.Rptr. 367, 702 P.2d 525]), the record of the arbitration proceeding is not subject to judicial notice as a record of the acts of the judicial department under subdivision (c) of Evidence Code section 452. Although the State Bar has been described as a public corporation and akin to a state public body or agency (*Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 565 [7 Cal.Rptr. 109, 354 P.2d 637]), subdivision (c) does not clearly make its actions matters subject to judicial notice as acts of either the legislative or executive department.

We need not decide the propriety of judicial notice of a State Bar arbitration, however. While a demurrer lies if the grounds on which it is based appear on the face of the complaint or from a matter of which the court is required to or may take judicial notice (Code Civ. Proc., § 430.30), the State Bar did not ask the superior court to take judicial notice of the arbitration record. Therefore, the record of the arbitration was not before the superior court. The question posed by plaintiffs' appeal was whether the superior court erred in sustaining the State Bar's demurrer to the complaint. In this court we review the judgment of the Court of Appeal. ■ In deciding the question raised by an appeal, a reviewing court will ordinarily look only to the record made in the trial court. While the reviewing court may take judicial notice of matters not before the trial court, it need not do so. (*Doers* v. *Golden Gate Bridge, etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) We decline to do so here, as the State Bar puts forth no reason for its failure to request the trial court and Court of Appeal to take judicial notice of the eight cartons of materials comprising the record of the arbitration it now asks this court to review. (See also *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1024 [282 Cal.Rptr. 877] ["We also consider all documents which have been determined by the trial court as appropriate for judicial notice, many of which are mentioned in the complaint."].)[5]

An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been

---

[5]The State Bar also requests that the court take judicial notice under Evidence Code sections 452, 453, and 459 of the Report of the Senate and Assembly Judicial Committees on Implementation of *Keller* v. *State Bar of California*. Again the authority for taking judicial notice of this document is unclear. Assuming that the submission is an official act of the legislative department, the request is granted. We deem the report irrelevant to the issue of whether plaintiffs' complaint was subject to demurrer, however.

presented to the trial court for its consideration in the first instance. (*People v. Preslie* (1977) 70 Cal.App.3d 486, 493 [138 Cal.Rptr. 828]; *People v. Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 482, fn. 3 [83 Cal.Rptr. 771] overruled on other grounds *People v. Turner* (1984) 37 Cal.3d 302, 318 [208 Cal.Rptr. 196, 690 P.2d 669].) The administrative record is such a matter.

A second problem with the State Bar's claim that res judicata effect must be given to the arbitration proceeding is that a court may not give preclusive effect to the decision in a prior proceeding if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged. (*Astoria Federal S. & L. Assn.* v. *Solimino* (1991) 501 U.S. 104 [115 L.Ed.2d 96, 111 S.Ct. 2166]; *Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].) This is not, as the State Bar's argument suggests, simply a policy decision to be made by this court.

The United States Supreme Court, in a series of arbitration-related cases, has held that giving preclusive effect to a prior arbitral decision in a section 1983 action is contrary to the intent of Congress that section 1983 claims be judicially resolved. And, in the one decision in which the court has concluded that preclusive effect may be given to a prior arbitration in an action brought under a different federal statute, the court emphasized that the parties *voluntarily* agreed to arbitrate the federal claim. Plaintiffs did not voluntarily agree to arbitrate their *Keller* challenge or their section 1983 claims.

1. *Availability of arbitration or other remedies.*

A review of United States Supreme Court decisions suggests that the court does not deem arbitration of claimed violations of constitutional rights to be equivalent to, or an acceptable substitute for, judicial resolution in a section 1983 action. Moreover, other decisions of the high court establish that a section 1983 action may be displaced by an alternative remedy only when Congress has foreclosed the right to the section 1983 action.[6] No state-created remedy may displace a section 1983 action, which is supplementary to any other remedies, unless Congress has expressed an intent that the state

---

[6]However, when it is alleged that property has been taken without due process or adequate compensation in violation of the takings clause of the Fifth Amendment or the Fourteenth Amendment, an adequate state remedy forecloses a section 1983 action because the availability of that remedy precludes a violation of either constitutional right. (See *Hudson* v. *Palmer* (1984) 468 U.S. 517, 534 [82 L.Ed.2d 393, 408, 104 S.Ct. 3194]; *Parratt* v. *Taylor* (1981) 451 U.S. 527 [68 L.Ed.2d 420, 101 S.Ct. 1908] overruled on other grounds *Daniels* v. *Williams* (1986) 474 U.S. 327, 330 [88 L.Ed.2d 662, 667-668, 106 S.Ct. 662].)

remedy do so. The rule cannot differ for state- and federally created remedies, as the intent of Congress controls the availability of a section 1983 action to remedy violations of federal statutory and constitutional rights. When an alternative federal statutory right is available, a section 1983 action must be permitted unless Congress has expressed an intent, or the alternative federal statutory scheme reflects congressional intent, that the alternative right be exclusive. It follows that the availability of a state remedy does not displace a section 1983 action.

### 2. *The arbitration cases.*

The Court of Appeal reviewed only the arbitration cases and concluded, correctly, that under these decisions the availability of arbitration, and the plaintiffs' participation in that arbitration without seeking judicial review of the arbitrator's decision, did not preclude this section 1983 action.

In the first of the decisions relied on by the Court of Appeal, *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011], pursuant to a grievance/arbitration provision of a union contract, the plaintiff's union had processed the plaintiff employee's complaint that he had been discharged unjustly through mediation and arbitration proceedings in which a claim of racial discrimination had been made. The arbitrator ruled that plaintiff had been discharged for cause. Before that ruling was made, however, plaintiff had filed a racial discrimination complaint with the state Civil Rights Commission and that complaint had been referred to the Equal Employment Opportunity Commission (EEOC). Several months after the arbitrator's ruling, following an EEOC ruling against him, plaintiff filed a civil action under 42 United States Code section 2000e-2(a)(1), title VII of the Civil Rights Act of 1964 (Title VII), alleging that his discharge resulted from a racially discriminatory employment practice.

The district court granted summary judgment for the defendant employer, ruling that plaintiff had voluntarily elected to pursue his grievance to final arbitration pursuant to the collective bargaining agreement, was bound by the arbitral decision, and therefore could not sue the employer under Title VII. The court of appeals affirmed. The Supreme Court reversed, holding that the contractual arbitration remedy and the statutory Title VII action differed in their purpose, in the questions presented and resolved, and in the procedures followed.[7] The court found no congressional intent in Title VII to restrict access to the remedies it provided and held that the grievance/

---

[7]The court noted that the purpose of the arbitration was to effectuate the intent of the parties in the collective bargaining agreement and that the arbitrator lacked authority to invoke public laws that conflict with that intent.

arbitration remedy and Title VII remedies were parallel and cumulative. There could be no waiver of the right to a Title VII action by virtue of the collective bargaining contractual agreement because that would defeat the congressional purpose underlying Title VII.

The court also held that it was not required to give deference to the arbitral decision. Arbitration, it held, was not an appropriate forum for resolution of Title VII disputes, as the arbitrator's task was not to carry out the requirements of the statute, the arbitrator typically was selected because of expertise in the law of the shop, not legal knowledge, and the factfinding process in arbitration was not equivalent to that in a judicial forum. "The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." (*Alexander* v. *Gardner-Denver Co.*, *supra*, 415 U.S. at pp. 57-58 [39 L.Ed.2d at p. 163].) The court concluded, on that basis, that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." (*Id.* at pp. 59-60 [39 L.Ed.2d at pp. 164-165].)

*Alexander* v. *Gardner-Denver Co.*, *supra*, 415 U.S. 36, was followed by *Barrentine* v. *Arkansas-Best Freight System* (1981) 450 U.S. 728 [67 L.Ed.2d 641, 101 S.Ct. 1437], in which the Supreme Court reached the same conclusion with regard to a union's unsuccessful presentation of employee wage claims to a grievance panel, followed by a suit under the Fair Labor Standards Act (FLSA) (28 U.S.C. § 201 et seq.). In a separate count of the FLSA action, the employees sought to have the decision of the grievance panel set aside on the ground that the union had breached its duty of fair representation. Both the district court and the court of appeals concluded that the FLSA claim could not be pursued because the employees had voluntarily submitted their grievance to binding arbitration. Again the Supreme Court reversed.

The court acknowledged the tension between the policies underlying collective bargaining and statutory protection of the nonwaivable substantive rights to wage and hour benefits in the FLSA. It concluded, however, that those statutory rights might be lost if submission of a claim to arbitration precluded a later suit under the FLSA in federal court. This could occur for two reasons. The union, which processes such claims rather than the employee individually, might fail to vigorously present the employee's claim.

The interest of the union, the court noted, lay in maximizing overall member compensation, not in ensuring that individual employees received the best possible compensation deal. Moreover, an arbitrator might not be knowledgeable about the public law considerations underlying the FLSA. Therefore, the arbitrator might not be competent to decide the ultimate legal issue of whether the statute had been violated, and, even if competent to do so, might not have the contractual authority to do so. The arbitrator might be required to carry out the intent of the collective bargaining agreement, rather than implement the statute. Finally, the court again noted the distinction between contractual arbitration and the judicial remedy, in which the arbitrator may award only that relief provided for in the collective bargaining agreement.

Reaffirming its decision in *Alexander* v. *Gardner-Denver Co.*, *supra*, 415 U.S. 36, the court held that "the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures." (*Barrentine* v. *Arkansas-Best Freight System*, *supra*, 450 U.S. at p. 745 [67 L.Ed.2d at pp. 656-657].)

In the next case, *McDonald* v. *West Branch* (1984) 466 U.S. 284 [80 L.Ed.2d 302, 104 S.Ct. 1799], arbitration of a labor grievance claiming no just cause for the plaintiff's discharge again preceded the federal court action. This time, however, a section 1983 action was the legal action. The plaintiff alleged that he had been discharged for exercising his First Amendment rights to free speech and association and to petition the government. The jury returned a verdict in favor of the plaintiff, a former policeman, against the chief of police, but the court of appeals gave preclusive effect to the unappealed arbitral decision, holding that the First Amendment claims were barred by the doctrines of res judicata and collateral estoppel.

The Supreme Court reversed after concluding that, as in the statutes at issue in *Alexander* v. *Gardner-Denver Co.*, *supra*, 415 U.S. 36, and *Barrentine* v. *Arkansas-Best Freight System*, *supra*, 450 U.S. 728, Congress intended that section 1983 be judicially enforceable. As in the FLSA and EEOC decisions, arbitration could not provide an adequate substitute for judicial proceedings in adjudicating the plaintiff's statutory claims, and giving the award preclusive effect "would undermine that statute's efficacy in protecting federal rights." (*McDonald* v. *West Branch*, *supra*, 466 U.S. at p. 290 [80 L.Ed.2d at p. 308].)

The court stated once more the factors that led it to that conclusion: (1) "An arbitrator may not . . . have the expertise to resolve the complex legal questions that arise in § 1983 actions." (*McDonald* v. *West Branch, supra,* 466 U.S. at p. 290 [80 L.Ed.2d at p. 308].); (2) under the contract provisions, the arbitrator might not have the authority to enforce section 1983, and, if there was a conflict between the employee's statutory rights and the collective bargaining agreement, the arbitrator was bound to enforce the latter; (3) the union had exclusive control over the presentation of the grievance to the arbitrator, and its interests might not be identical to or even compatible with those of the employee it represented; and (4) "arbitral factfinding is generally not equivalent to judicial fact-finding. As we explained in *Gardner-Denver,* '[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable.' " (*Id.* at p. 291 [80 L.Ed.2d at p. 309].)

*Hudson, supra,* 475 U.S. 292, postdates these decisions. It differed from them in that it involved an action by nonmembers against a union. The nonmembers' First Amendment-based claims, which challenged the union's calculation of the "*Abood* amount," i.e., the proportionate share of political and ideological expenses that they were entitled to exclude from their compulsory payment, were brought under section 1983. In the court of appeals, however, they challenged only the procedure by which the amount of the deductions was determined and by which the union responded to objections from dissenters. Therefore, the court did not decide how the contractual grievance/arbitration decisions summarized above affect a section 1983 action that challenges a union's calculation of the *Abood* amount and that is decided after arbitration of a similar challenge.

Discussing the union's procedure for responding to a dissenter's challenges, however, that court stated that a "a full-dress administrative hearing, with evidentiary safeguards" was not part of the necessary constitutional minimum requirement. (*Hudson, supra,* 475 U.S. at p. 308, fn. 21 [89 L.Ed.2d at p. 248].) Instead, the court said, "we think that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker, so long as the arbitrator's selection did not represent the Union's unrestricted choice" but "[t]he arbitrators' decision would not receive preclusive effect in any subsequent § 1983 action. See *McDonald* v. *West Branch,* 466 U.S. 284 [80 L.Ed.2d 302, 104 S.Ct. 1799] (1984)." (*Ibid.*)

The court appears to have assumed, therefore, that arbitration of the *Abood* amount does not preclude a subsequent section 1983 action. The arbitration

procedure was suggested only as an expeditious means of resolving narrow questions of deductibility and avoiding infringement of First Amendment rights pending that resolution, not as a substitute for, or prerequisite to, a section 1983 action. (*Hudson, supra*, 475 U.S. at p. 292, fn. 20 [89 L.Ed.2d at pp. 247-248].) That assumption is also reflected in the concurring opinion of Justice White, in which the Chief Justice joined, which stated that "if the union provides for arbitration and complies with the other requirements specified in our opinion, it should be entitled to insist that the arbitration procedure be exhausted before resorting to the courts." (*Hudson, supra*, 475 U.S. at p. 311 [89 L.Ed.2d at p. 250] (conc. opn. of White, J.).)

Recently, however, the Supreme Court distinguished the pre-*Hudson* decisions in *Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647] on the basis that they were not decided under the Federal Arbitration Act. In *Gilmer*, a securities representative had been required by his employer to register with the New York Stock Exchange. The registration application included an agreement to arbitrate any dispute arising out of the employment or termination of the employment. Without doing so, the employee, who had been discharged from employment, initiated age discrimination proceedings before the EEOC and then filed suit under the Age Discrimination in Employment Act of 1967 (ADEA), 29 United States Code section 621 et seq. The district court, relying on *Alexander* v. *Gardner-Denver Co., supra*, 415 U.S. 36, denied the employer's motion to compel arbitration, reasoning that Congress intended to protect ADEA claimants from waiver of the judicial forum. The court of appeals reversed and the Supreme Court affirmed its judgment, holding the plaintiff had not established that Congress intended to preclude mandatory arbitration of ADEA claims.

The court reasoned that the plaintiff had agreed voluntarily to arbitrate his statutory claim; the claim could be effectively vindicated in the arbitral forum; and mandatory arbitration was consistent with the flexible approach of the ADEA to resolving claims by informal methods which included conciliation, conference and persuasion, and with Congress's grant of concurrent jurisdiction to state and federal courts.

In reaching its decision, the court rejected some of the arguments it found dispositive in the *Abood* amount cases—those regarding the competence of the arbitrator, the adequacy of discovery, and the scope of available relief. Without discussing the arbitrator's lack of expertise in resolving ADEA legal issues, the court said that under the New York Stock Exchange rules competent, unbiased arbitrators were available. It also said that it was unlikely age discrimination cases would require more discovery than that

permitted in "RICO" (Racketeer Influenced and Corrupt Organizations Act; 18 U.S.C. § 1961 et seq.) and antitrust claims it had found to be arbitrable, but it also noted that there had been no showing that the New York Stock Exchange discovery provisions would be insufficient to afford ADEA claimants a fair opportunity to present their claims.

*Gilmer* v. *Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. 20, does not appear to be a controlling departure from the earlier arbitration cases, however. In *Gilmer*, the court emphasized that by agreeing to arbitrate the plaintiff had traded the more extensive procedures available in the federal court for the simplicity, informality, and expedition of arbitration. The court rejected an argument that the purposes of the ADEA could not be adequately carried out because arbitration did not allow for broad equitable relief and class actions. The arbitrator could fashion equitable relief, and class actions could be brought by the EEOC.

The court explained why *Alexander* v. *Gardner-Denver Co.*, *supra*, 415 U.S. 36, and its progeny were not controlling. In those cases, the court said, the employees' statutory rights were distinct from their contractual rights, and the labor arbitrator had authority to decide only contractual rights. Moreover, "those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a 'liberal federal policy favoring arbitration agreements.' " (*Gilmer* v. *Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. at p. 35 [114 L.Ed.2d at p. 43].)

*Gilmer*, on which the State Bar relied in the Court of Appeal, is distinguishable from the previous arbitration cases for the reasons stated by the Supreme Court in its opinion and recognized by the Court of Appeal in its opinion. It is also distinguishable from this action, in that it did not involve a section 1983 action. Here, too, the arbitration was not voluntary. Plaintiffs at no time agreed to surrender their right to a section 1983 action. The arbitrator, who plaintiffs assert had no legal training, could grant only part of

the relief sought a refund of part of plaintiffs' State Bar dues. He could not grant declaratory relief or enjoin future violations of plaintiffs' constitutional rights or make any ruling that would bind the State Bar in the future in identifying those activities for which objecting members' dues may not be used without violating the members' First Amendment rights.

In this court, the State Bar has abandoned its previous reliance on *Gilmer*, and instead relies on the reasoning of the United States District Court in *Bromley* v. *Michigan Educ. Ass'n-NEA* (E.D.Mich. 1994) 843 F.Supp. 1147 (*Bromley II*), and *Bromley* v. *Michigan Educ. Association-NEA* (E.D.Mich. 1993) 815 F.Supp. 220. The State Bar argues that those decisions applied reasoning similar to that in *Gilmer* in concluding that the *Hudson/Keller* type procedures at issue there were more analogous to judicial factfinding and thus could be relied on in a subsequent section 1983 action. One reason for that conclusion was the court's belief that the arbitration procedure would be a waste of resources if the arbitrator's findings and the record were not given great weight. As the court of appeals reasoned in *Hohe* v. *Casey* (3d Cir. 1992) 956 F.2d 399, 409, however, the time is not wasted if it offers a potential for avoiding litigation.

Plaintiffs note, moreover, that the *Bromley* litigation has not been concluded, and that the court's other holdings in those decisions have greater relevance here. In *Bromley II* the court recognized the primary importance of diligent judicial review of the activities a union deems chargeable. (*Bromley II, supra*, 843 F.Supp. at p. 1153.) It held, consistent with the Supreme Court's arbitration decisions, that the arbitration record and findings were to be given only as much deference as is consistent with section 1983. It also recognized that the issue to be determined in a 1983 action is not the correct amount of the fee to be charged the union member, but the constitutional validity of the union's definitions of categories of chargeable activities and expenditures. (843 F.Supp. at p. 1154.)

Moreover, the State Bar's reliance on *Bromley* is inconsistent with the United States Court of Appeals for the Tenth Circuit's holding in *Palmer* v. *City of Monticello* (10th Cir. 1994) 31 F.3d 1499, where the court made it clear that whether evidence of an arbitration proceeding should be admitted in a section 1983 action is left to the discretion of the trial court based on the nature of the particular administrative or arbitration proceeding. There, considering defendant's claim that the trial court had erred in excluding evidence of a prior administrative hearing, which the court concluded was more like an arbitration, the court held that there was no error. "The Supreme Court has held that arbitrations and other types of non-judicial dispute resolution devices are not substitutes for judicial resolution of § 1983

claims. See *McDonald* v. *City of West Branch, Michigan*, 466 U.S. 284, 290-92, 104 S.Ct. 1799, 1803-04, 80 L.Ed.2d 302 (1984); *see generally Atchison, T. & S. F. R. Co.* v. *Buell*, 480 U.S. 557, 564-65, 107 S.Ct. 1410, 1414-16, 94 L.Ed.2d 563 (1987) ('This Court has, on numerous occasions, declined to hold that individual employees are, because of the availability of arbitration, barred from bringing claims under federal statutes.') (citing *McDonald*, 466 U.S. 284 [80 L.Ed.2d 302, 104 S.Ct. 1799]) (other citations omitted). The fact-finding that occurs in arbitration is simply not the same as that which occurs in a federal court . . . . [¶] Therefore, federal courts are given discretion to decide whether to admit or exclude evidence of arbitral proceedings, keeping in mind that Congress intended that § 1983 claims be resolved judicially as fully as possible. See *id.* at 292 n. 13, 104 S.Ct. at 108, n. 13." (*Palmer* v. *City of Monticello, supra*, 31 F.3d at pp.1507-1508.)

The State Bar seeks to avoid the impact of these cases by arguing that the arbitration proceeding in which plaintiffs participated was equivalent to the type of administrative adjudication to which the Supreme Court gave preclusive effect in *University of Tennessee* v. *Elliott* (1986) 478 U.S. 788 [92 L.Ed.2d 635, 106 S.Ct. 3220]. There, after requesting an administrative hearing to contest his discharge, the employee sued in federal court, making the same claim under various civil rights laws, including Title VII and section 1983. The administrative hearing led to a decision by an administrative law judge that the defendant had not been racially motivated in seeking to discharge the employee, but the administrative law judge ordered the employee transferred rather than discharged. Defendant's vice-president affirmed the ruling in an administrative appeal. The employee did not seek judicial review of that decision.

The district court then granted the defendant's motion for summary judgment, ruling that the federal statutes under which plaintiff sued did not afford a right to relitigate the claim. The court of appeals reversed, holding that Congress did not intend federal courts to be bound by unreviewed administrative determinations in actions brought under Title VII. It found the answer less clear under section 1983, but reached the same conclusion. The Supreme Court reversed as to the section 1983 action, reasoning that Congress did not have in mind the possible preclusive effect of an administrative adjudication when the predecessor of section 1983 was enacted and did not intend to create an exception to the general rules of claim preclusion. (*University of Tennessee* v. *Elliott, supra*, 478 U.S. 788, 797 [92 L.Ed.2d 635, 645-646].)

The Supreme Court repeated its approval of preclusive effect for administrative adjudications in *Astoria Federal S. & L. Assn.* v. *Solimino, supra*,

501 U.S. at pages 107-108 [115 L.Ed.2d at p.104, 111 S.Ct. at p. 2169]: "We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. 'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.' *United States* v. *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 [16 L.Ed.2d 642, 660-661, 86 S.Ct. 1545] (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. [Citation.] The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see *University of Tennessee* v. *Elliott*, 478 U.S. 788, 798 [92 L.Ed.2d 635, 646, 106 S.Ct. 3220] (1986), which acts in a judicial capacity."

Neither *University of Tennessee* v. *Elliott, supra*, 478 U.S. 788, nor *Astoria Federal S. & L. Assn.* v. *Solimino, supra*, 501 U.S. 104, involved compulsory arbitration of a claim prior to filing a section 1983 suit, and neither cast doubt on the rule of *McDonald* v. *West Branch, supra*, 466 U.S. 284, 290 [80 L.Ed.2d 302, 308-309]. There the court held that, because Congress intended that section 1983 issues be judicially resolved, giving preclusive effect to an arbitration decision would undermine the efficacy of section 1983 in protecting federal rights.

The State Bar's argument depends on its assertion that the arbitration of plaintiffs' claims was equivalent to an administrative adjudication of the type considered by the court in *University of Tennessee* v. *Elliott, supra*, 478 U.S. 788. That the arbitration was equivalent to an administrative adjudication is not apparent from the face of the complaint, however. Moreover, the assertion is inconsistent with the State Bar's own rules and regulations, article IA, section 3D through H, which establishes "arbitration" as the means by which *Keller* challenges are to be resolved, and with the State Bar's concession that the process is an arbitration modeled after that proposed by the Supreme Court in *Hudson, supra*, 475 U.S. 292.

B. *Primacy of congressional intent on issue of exhaustion of state remedies.*

The State Bar also argues that, if a section 1983 action is available to plaintiffs, they should be required to seek judicial review of the arbitration

decision because doing so would serve general principles of comity, judicial economy, and finality, and would be consistent with the constitutional rights in issue. Plaintiffs respond that *Patsy* v. *Florida Board of Regents* (1982) 457 U.S. 496 [73 L.Ed.2d 172, 102 S.Ct. 2557] precludes imposition of an exhaustion of state administrative remedies requirement on a section 1983 plaintiff.

Again we agree. The Supreme Court has made it clear that a section 1983 plaintiff need not have exhausted alternative remedies before initiating a section 1983 action.[8]

The arbitration-related cases discussed above did not directly address the question of when, if ever, a state remedy will foreclose a section 1983 action for violation of a constitutional or federal statutory right, or if exhaustion of administrative or arbitral remedies may be required as a prerequisite to a section 1983 action. Other Supreme Court decisions hold, however, that in the absence of a clearly expressed congressional intent to require exhaustion of an alternative remedy before initiating a section 1983 action, a court may not require exhaustion. A fortiori, a state may not require exhaustion of alternative administrative and judicial remedies as a prerequisite to a section 1983 suit brought in state court.

The court emphasized the overriding importance of congressional intent most recently in *Wilder* v. *Virginia Hospital Assn.* (1990) 496 U.S. 498 [110 L.Ed.2d 455, 110 S.Ct. 2510]. " ' "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federally secured right.' [Citation.] The burden is on the State to show 'by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.' . . . In the absence of such an express provision, we have found private enforcement foreclosed only when the statute itself creates a remedial scheme that is 'sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983.' " (*Id.* at pp. 520-521 [110 L.Ed.2d at p. 474].)

---

[8]Our conclusion here makes it unnecessary to decide whether plaintiffs had an available mechanism by which to seek judicial review of the arbitrator's decision. As plaintiffs note, however, Code of Civil Procedure section 1094.5, which governs the use of mandamus to obtain judicial review of administrative adjudication, and on which the State Bar relies for the proposition that such review is available to plaintiffs, does not apply to arbitration. It is limited to review of administrative orders made after proceedings in which an administrative hearing is required by law. This review by "administrative mandamus" inquires into "the validity of any final administrative order or decision made as the result of a proceeding in which *by law* a hearing is required to be given . . . ." (Code Civ. Proc., § 1094.5, subd. (a), italics added.)

*Wilder* also addressed exhaustion requirements. The issue in *Wilder* was whether health care providers could maintain a section 1983 suit against the Governor of Virginia to compel the state to comply with federal law and regulations requiring that Medicaid reimbursement rates be reasonable and adequate. The court concluded that Congress had not foreclosed a private section 1983 action, as it had not expressed an intent to do so and the administrative procedures did not establish a comprehensive scheme that manifested such congressional intent. The court specifically rejected the argument that the existence of administrative procedures under which the health care providers could obtain review of payment claims evidenced congressional intent to foreclose reliance on section 1983 and stated that the availability of judicial review under the Virginia Administrative Procedure Act was irrelevant to whether relief under section 1983 was available. (*Wilder* v. *Virginia Hospital Assn.*, *supra*, 496 U.S. 498, 522 & fn. 20 [110 L.Ed.2d 455, 475-476].) The court then restated the rule: "The availability of state administrative procedures ordinarily does not foreclose resort to § 1983. See *Patsy* v. *Board of Regents of Fla.*, 457 U.S. 496, 516 [73 L.Ed.2d 172, 187-188, 102 S.Ct. 2557] (1982.)" (*Id.* at p. 523 [110 L.Ed.2d at p. 476].)

The court had repeated that admonition six months earlier in *Golden State Transit Corp.* v. *Los Angeles* (1989) 493 U.S. 103 [107 L.Ed.2d 420, 110 S.Ct. 444]. There the trial court concluded that section 1983 did not authorize an award of compensatory damages to a taxicab operator whose right to renewal of its franchise had been improperly conditioned on settlement of a pending labor dispute between the operator and its union. The court of appeals agreed and the Supreme Court granted certiorari limited to the question of whether the National Labor Relations Act (NLRA) (49 Stat. 449, as amended, 29 U.S.C. § 151 et seq.) created rights enforceable under section 1983.

The court held that the NLRA did create rights enforceable under section 1983 notwithstanding the comprehensive enforcement mechanisms created by the NLRA. The court reemphasized its prior holdings that the coverage of section 1983 must be "broadly construed." (*Golden State Transit Corp.* v. *Los Angeles*, *supra*, 493 U.S. at p. 105 [107 L.Ed.2d at p. 427].) It then directed a two-step inquiry, asking first if a federal right had been violated, and second whether Congress had specifically foreclosed a section 1983 remedy. (493 U.S. at p. 106 [107 L.Ed.2d at pp. 427-428].) The court also noted that the burden is on the defendant to establish that Congress had withdrawn the remedy, and the court will not lightly conclude that it has done so. (*Id.* at p. 107 [107 L.Ed.2d at pp. 428-429].)

The Supreme Court's most extensive consideration of the question of congressional intent appears in *Patsy* v. *Florida Board of Regents*, *supra*, 457

U.S. 496, to which the court referred in *Wilder* v. *Virginia Hospital Assn.*, *supra*, 496 U.S. 498. There the issue arose in the context of a claim that a section 1983 plaintiff could be required to exhaust state remedies before prosecuting a section 1983 action. The defendant in the section 1983 action, which was brought in the federal court by one of defendant's employees, argued that the action should be dismissed because the employee had not exhausted available administrative remedies. The employee claimed that she had been subjected to intentional discrimination on the basis of race and sex.

In *Patsy* the Supreme Court reviewed the history of section 1983 and of the then recent Civil Rights of Institutionalized Persons Act, 42 United States Code section 1997 et seq., which included a specific, but limited, exhaustion requirement in section 1997e. The court began its historical review with the debates on the Civil Rights Act of 1871 (17 Stat. 13), the precursor of section 1983, and found three recurring themes that supported a conclusion that exhaustion of state administrative remedies should not be required in a section 1983 action in federal court.[9] The first was the congressional belief that immediate access to the federal courts was essential because Congress gave the federal courts " 'the paramount role . . . to protect constitutional rights.' " (457 U.S. at p. 500 [73 L.Ed.2d at p. 178].) Next was a concern that "state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights" (*id.* at p. 505 [73 L.Ed.2d at p. 181]), and that Congress was reluctant to require exhaustion of state administrative remedies when that might require judicial deference to the questionable factfinding of state administrative agencies. Last was congressional intent to provide dual or concurrent fora, a consideration that is particularly relevant here. "[M]any legislators interpreted the bill to provide dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief. Cf. *Monroe* v. *Pape*, 365 U.S. 167, 183 [5 L.Ed.2d 492, 502-503, 81 S.Ct. 473] (1961) ('The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked')." (*Patsy* v. *Florida Board of Regents*, *supra*, 457 U.S. at p. 506 [73 L.Ed.2d at p. 181].)

The court also based its decision on congressional action in the then-recent adoption of 42 United States Code section 1997e, as part of the Civil

---

[9]The court made it clear that the same analysis was applicable to both federal and state administrative remedies. "Congressional intent is important in determining the application of the exhaustion doctrine to cases in which federal administrative remedies are available, as well as to those in which state remedies are available. . . . Even where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." (*Patsy* v. *Florida Board of Regents*, *supra*, 457 U.S. at p. 502, fn. 4 [73 L.Ed.2d at p. 179].)

Rights of Institutionalized Persons Act, in which the question of exhaustion had been expressly considered, and a limited exhaustion requirement that would otherwise have been unnecessary had been created for actions under that act.

If *Patsy* v. *Florida Board of Regents*, *supra*, 457 U.S. 496, did not compel a conclusion that exhaustion of administrative remedies may not be made a prerequisite to a section 1983 action in a state court, the court's subsequent decision in *Felder* v. *Casey* (1988) 487 U.S. 131 [101 L.Ed.2d 123, 108 S.Ct. 2302], does. In *Felder*, the court held that *Patsy* is applicable to state court actions. *Felder* is dispositive here.

In *Felder* v. *Casey*, *supra*, 487 U.S. 131, the Supreme Court addressed the nature of conditions a state may place on actions to vindicate federal statutory rights. The plaintiff had initiated a section 1983 action in a Wisconsin state court. The Wisconsin Supreme Court held that dismissal of the action was proper because the plaintiff failed to comply with a state tort claims statute. The United States Supreme Court reversed in a decision which addresses the limits on a state's ability to impose its procedural requirements on a litigant in a section 1983 action.

Building on past cases in which the court had held that a federal court may not import state-created immunities (*Martinez* v. *California* (1980) 444 U.S. 277, 284 [62 L.Ed.2d 481, 488-489, 100 S.Ct. 553]) and statutes of limitation (*Burnett* v. *Grattan* (1984) 468 U.S. 42, 50-55 [82 L.Ed.2d 36, 44-48, 104 S.Ct. 2924]), the court held that notice-of-claim provisions could not be applied to section 1983 actions. It did so because there is no such requirement for a section 1983 action brought in the federal court. Therefore, if the requirement were permitted in a state court action "the enforcement of such statutes in § 1983 actions brought in state court will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court. States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts." (*Felder* v. *Casey*, *supra*, 487 U.S. at p. 141 [73 L.Ed.2d at pp. 139-140].)

The court also looked again to the history on which it had relied in *Patsy* v. *Florida Board of Regents*, *supra*, 457 U.S. 496, which led it to conclude that Congress did not intend to allow state law provisions to deny section 1983 plaintiffs "immediate" access to the federal courts. The state notice-of-claim provision had the effect of forcing the plaintiff both to give notice within 120 days of the civil rights violation, and also to wait an additional 120 days while the defendant investigated the claim and attempted to settle

it. This, the court concluded, was incompatible with the congressional intent underlying section 1983. The court rejected the state's argument that the delay was de minimis and did not alter the right to seek full compensation in a lawsuit, explaining that the argument "ignores our prior assessment of 'the dominant characteristic of civil rights actions: *they belong in court.*' *Burnett*, 468 U.S. at 50 [82 L.Ed.2d at pp. 44-45] (emphasis added). 'These causes of action,' we have explained, 'exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable *in the first instance.*' *Ibid.* (emphasis added). The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court, and States therefore may not adulterate or dilute the predominant feature of the federal right by imposing mandatory settlement periods, no matter how reasonable the administrative waiting period or the interests it is designed to serve may appear." (*Felder* v. *Casey, supra,* 487 U.S. at p. 148 [101 L.Ed.2d at p. 144].)

In a subsequent discussion, the court equated the claims requirement to an exhaustion requirement. (*Felder* v. *Casey, supra,* 487 U.S. at p. 149 [101 L.Ed.2d at pp. 144-145].) It also rejected the state's comity argument on preemption grounds. "In a State that demands compliance with such a statute before a § 1983 action may be brought or maintained in its courts, the outcome of federal civil rights litigation will frequently and predictably depend on whether it is brought in state or federal court. Thus the very notions of federalism upon which respondents rely dictate that the State's outcome-determinative law must give way when a party asserts a federal right in state court. [¶] . . . . [¶] Wisconsin . . . may not alter the outcome of federal claims it chooses to entertain in its courts by demanding compliance with outcome-determinative rules that are inapplicable when such claims are brought in federal court . . . . The state notice-of-claim statute is more than a mere rule of procedure: as we discussed above, the statute is a substantive condition on the right to sue governmental officials and entities. . . ." (*Id.* at pp. 151-152 [101 L.Ed.2d at pp. 146-147].)

While there is a recurrent concern in the *Felder* v. *Casey* opinion that a notice-of-claim statute forces the plaintiff to seek administrative relief from the party that caused the violation of the plaintiff's civil rights, the basis for the decision is far broader, making it impossible to distinguish the exhaustion requirement defendant would have this court impose on plaintiffs' section 1983 action.

It is clear from these cases that we may not deny plaintiffs the right to a judicial action for relief in the first instance by imposing a requirement that the plaintiff initiate or exhaust state remedies before filing a section 1983

action. Were we to do so, we would delay the time at which a section 1983 action could be brought and thus deny immediate access to the federally created right. And we would create an outcome-determinative rule that would lead to inconsistent results in state and federal section 1983 actions. Those brought in federal court could proceed regardless of whether administrative relief had been sought, but those brought in state court would be subject to dismissal unless the plaintiff not only exhausted administrative remedies, but followed that by seeking review of the administrative action in the state court system.

The State Bar offers no evidence or argument on which this court might base a conclusion that Congress has foreclosed or conditioned a section 1983 remedy here or intended that a state might do so. We conclude on the basis of these decisions that the Court of Appeal correctly held that the State Bar arbitration of plaintiffs' claim is not an adequate or exclusive remedy. Plaintiffs are entitled, as a matter of controlling federal law, to seek relief in a section 1983 action, under *Hudson, supra*, 475 U.S. 292, and *McDonald* v. *West Branch, supra*, 466 U.S. 285.[10]

### III

#### *Disposition*

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur in the majority's judgment. I write separately to emphasize the limited nature of our holding today.

The United States Supreme Court has held that, consistent with the First Amendment, a union cannot compel an employee who must pay union membership dues because of an agency shop agreement to contribute support for "ideological activities unrelated to collective bargaining." (*Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209, 236 [52 L.Ed.2d 261, 285,

---

[10]The State Bar claims that it will be subjected to an unreasonable burden and expense if multiple suits challenging its *Keller* calculations are filed against it. As we noted earlier, however, this court is not free to decide the question on the basis of policy or preference as to the procedures for resolving *Keller* claims. We must carry out the intent of Congress that there be no state-created barriers to a section 1983 suit.

If numerous *Keller*-based section 1983 actions are commenced in state court, consolidation or coordination of the actions is available to ease the burden on the courts and the State Bar. (Code Civ. Proc., §§ 404 et seq., 1048; Cal. Rules of Court, rule 1501 et seq.)

97 S.Ct. 1782]; see also *Ellis* v. *Railway Clerks* (1984) 466 U.S. 435, 447 [80 L.Ed.2d 428, 441-442, 104 S.Ct. 1883].) In *Teachers* v. *Hudson* (1986) 475 U.S. 292 [89 L.Ed.2d 232, 106 S.Ct. 1066], the court set forth the procedures that a union must adopt in segregating chargeable dues from voluntary contributions for political activities. Among those procedures is one that will permit members' objections to the computation of the chargeable amount to be heard "in an expeditious, fair, and objective manner." (*Id.* at p. 307 [89 L.Ed.2d at p. 247].) The court further explained that, in order to provide the " 'constitutional minimum,' " the union did not need to provide "a full-dress administrative hearing, with evidentiary safeguards," but rather an "expeditious arbitration," provided that the arbitrator was impartial. (*Id.* at p. 308, fn. 21 [89 L.Ed.2d at p. 248].) However, such a minimal procedure "would not receive preclusive effect in any subsequent [42 United States Code section] 1983 action." (*Ibid.*, citing *McDonald* v. *West Branch* (1984) 466 U.S. 284 [80 L.Ed.2d 302, 104 S.Ct. 1799].)

In *Keller* v. *State Bar of California* (1990) 496 U.S. 1 [110 L.Ed.2d 1, 110 S.Ct. 2228], the court held that *Abood*'s First Amendment principles apply to those required to join and pay dues to an integrated state bar. The California State Bar may charge compulsory dues to fund activities germane to "regulating the legal profession and improving the quality of legal services" (*id.* at pp. 13-14 [110 L.Ed.2d at p. 15]), but may not use these dues to finance "activities having political or ideological coloration which are not reasonably related to the advancement of such goals" (*id.* at p. 15 [110 L.Ed.2d at p. 15]). The court further held that "[w]e believe an integrated bar could certainly meet its *Abood* obligation by adopting the sort of procedures described in *Hudson.* Questions whether one or more alternative procedures would likewise satisfy that obligation are better left for consideration upon a more fully developed record." (*Id.* at p. 17 [110 L.Ed.2d at p. 16].)

The United States Supreme Court has also held that if a civil rights plaintiff elects to adjudicate his claim with an administrative body acting in a judicial capacity, then the factfinding of that administrative body is entitled to preclusive effect in subsequent federal judicial proceedings. (*University of Tennessee* v. *Elliott* (1986) 478 U.S. 788, 798-799 [92 L.Ed.2d 635, 646-647, 106 S.Ct. 3220]; see also *Astoria Federal S. & L. Assn.* v. *Solimino* (1991) 501 U.S. 104, 107-108 [115 L.Ed.2d 96, 103-104, 111 S.Ct. 2166].) Thus, if an integrated state bar institutes a procedure greater than the constitutional minimum, equivalent to a "full-dress administrative hearing" (*Teachers* v. *Hudson, supra,* 475 U.S. at p. 308, fn. 21 [89 L.Ed.2d at p. 248]), it is likely that the findings of fact emerging from such hearing would be entitled to preclusive effect. Such findings would be reviewed for abuse of discretion under Code of Civil Procedure section 1094.5 or its federal equivalent. Of

course, the availability of such an administrative forum for resolving *Keller* claims would not prevent an aggrieved party from bringing suit, in the first instance, in a court of law. (See *Patsy* v. *Florida Board of Regents* (1982) 457 U.S. 496, 516 [73 L.Ed.2d 172, 187-188, 102 S.Ct. 2557].)

We do not decide today whether the arbitration procedure established by the State Bar is equivalent to an administrative hearing entitled to preclusive effect. The majority merely hold, and I agree, that this issue should not be resolved on demurrer, particularly in light of the fact that we are asked to take judicial notice of an extensive arbitration record that was not presented to the lower courts. Although the majority suggest that the State Bar's characterization of its proceeding as equivalent to an administrative adjudication "is inconsistent with [its] own rules and regulations" (maj. opn., *ante*, at p. 335), I do not understand the majority to be asserting that such characterization is determinative of the nature of the proceedings. The question whether the arbitration is in fact an impartial administrative hearing to which the principles of res judicata apply is to be answered by determining whether the arbitrator " 'is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' " (*University of Tennessee* v. *Elliott, supra,* 478 U.S. at pp. 797-798 [92 L.Ed.2d at p. 646].) This determination can only be made from an examination of the arbitration record. Thus, the State Bar is free to contend in subsequent proceedings that the factual findings in the hearing below are entitled to preclusive effect under the doctrine articulated in *Elliott.*

Even if preclusion per se is unwarranted, the arbitrator's findings may still be entitled to great weight. As the United States Supreme Court has held, " 'the weight to be accorded an arbitral decision' " in a section 1983 case is to " 'be determined in the court's discretion with regard to the facts and circumstances of each case.' " (*McDonald* v. *West Branch, supra,* 466 U.S. at p. 292, fn. 13 [80 L.Ed.2d at p. 310].) The court enumerated certain relevant factors in determining the weight of the decision, including " 'the existence of provisions in the collective-bargaining agreement that conform substantially with [the statute or constitution], the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue [in the judicial proceeding], and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's [statutory or constitutional] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitration on the basis of an adequate record.' " *(Id.* at pp. 292-293, fn. 13 [80 L.Ed.2d at p. 310], bracketed material in *McDonald.)*

The *McDonald* guidelines were formulated in the context of arbitration pursuant to a collective bargaining agreement, where the arbitrator's prime task is to ensure that the collective bargaining contract is fulfilled, and where litigation of the employee's constitutional rights may be incidental to the enforcement of the agreement. (See also *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 53-54 [39 L.Ed.2d 147, 161-162, 94 S.Ct. 1011].) In the present case, the arbitration specifically focused on the plaintiffs' First Amendment rights, and is, in fact, an arbitral procedure undertaken at the direction of the Supreme Court in *Hudson* and in *Keller*. Both of these factors argue in favor of the arbitration decision being given greater weight than the typical collective bargaining arbitration. Thus, in *Bromley* v. *Michigan Educ. Ass'n-NEA* (E.D.Mich. 1994) 843 F.Supp. 1147, 1153-1154, the court held that, in *Hudson*-type cases, the court is to review de novo the classification of *categories* of expenditures deemed to be chargeable, but may defer to the arbitrator as to the *amount* ascribed to each of those categories, once it is satisfied that the arbitrator was competent, used the proper methodology, and allowed the issue to be fully litigated.

As the majority correctly conclude, the appropriate judicial deference to the arbitrator's factual findings is also not something that can be resolved on demurrer. But an examination of the criteria enumerated in the *McDonald* case cited above suggests that, all other things being equal, the findings of an arbitrator specially chosen to adjudicate a *Hudson* or *Keller* action are entitled to greater weight, in a subsequent section 1983 action, than would be the findings of an arbitrator whose adjudication of section 1983 issues is incidental to the resolution of a dispute arising out of a collective bargaining agreement.

With this understanding of the limited reach of the majority's holding, I concur in its judgment.

On January 18, 1996, the opinion was modified to read as printed above.