[No. B012329. Second Dist., Div. One. Apr. 2, 1986.]

VERDUGO WOODLANDS HOMEOWNERS AND RESIDENTS
ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF GLENDALE, et al., Defendants and Respondents.

**COUNSEL**

Yanz, Heyler & Hertz, Gordon Yanz, William F. Hertz II and Roger C. Lyon, Jr., for Plaintiffs and Appellants.

Frank R. Manzano, City Attorney, Dennis H. Schuck and Scott Howard, Assistant City Attorneys, Irsfeld, Irsfeld & Younger, Robert W. Garcin, Melby & Anderson and Jarrett S. Anderson for Defendants and Respondents.

## OPINION

**HANSON (Thaxton), Acting P. J.**—Appeal taken from a judgment of the superior court denying plaintiffs a permanent injunction and dissolving a temporary restraining order. The appeal lies. (Code Civ. Proc., § 904.1, subd. (f).)

Plaintiffs were Verdugo Woodlands Homeowners and Residents Association, an unincorporated association, George E. Davis and Harry Schweigler, members of the association. Named as defendants were City of Glendale, City Council of the City of Glendale, the individual members of the City Council, Carroll Parcher, Larry Zarian, Ginger Bremberg, Jack Day and Jerry Milner; various city officials, Gerald J. Jamriska, Alexander C. Pyper, Merle H. Hagemeyer; and various private individuals identified as developers of real property in the Verdugo Woodlands area.[1]

Plaintiffs filed a complaint for declaratory relief, injunctive relief and also sought a writ of mandate/prohibition on March 5, 1985. The superior court issued a temporary restraining order on condition plaintiffs post a bond, which they did. The matter came before the court for hearing on March 22, 1985. After review of the moving and opposing papers, and after hearing the oral argument of the parties, the trial court refused to grant a permanent injunction and dissolved the temporary restraining order. Plaintiffs have taken a timely appeal from the judgment (order). We affirm the judgment of the superior court.

### FACTUAL BACKGROUND

The parties do not disagree about the basic facts which have given rise to this litigation. Our recital is derived from pertinent provisions of the Government Code relating to land use,[2] as well as the record, including the

---

[1]For purposes of clarity, the defendants will be designated City in our discussion here; when the private defendants are referred to, they will be designated the Developers. The ordinance amending section 1102 of the Glendale Zoning Appendix will sometimes be referred to as the Ordinance.

[2]All references will be to the Government Code, unless otherwise specified.

complaint and the papers filed by both sides with respect to the relief sought below.

We commence our discussion by attempting to clarify the legislative scheme contained in the prolix and sometimes confusing provisions of title 7 of the Government Code which is entitled "Planning and Land Use." Division 1 of the title concerns "Planning and Zoning," and the controversy at bench involves statutory law in chapter 3, "Local Planning" (§ 65100 et seq.) and in chapter 4, "Zoning Regulations" (§ 65800 et seq.).

Section 65300 mandates that "[e]ach county and city shall adopt a comprehensive, long-term general plan for the physical development of the county or city, . . ." Section 65300.7 declares that "The Legislature finds that the diversity of the state's communities and their residents requires planning agencies and legislative bodies to implement [a mandated general plan] in ways that accommodate local conditions and circumstances, while meeting its minimum requirements." As it then read, section 65302 sets forth the minimum requirements a general plan must include, enumerating basic areas of concern, and declares that "The requirements of this section shall apply to charter cities." (Sections 65301 and 65302 were amended in 1984 and 1985; section 65301 now declares that the general plan requirement is applicable to charter cities). All of the above referenced sections are contained in chapter 3.

Chapter 4, however, with the emphasis on "Zoning Regulations" starts off in section 65803, enacted by Statutes 1965, chapter 1880, section 6, page 4346, with the statement that "The provisions of this chapter shall not apply to a chartered city, except to the extent that the same may be adopted by charter or ordinance of the city." Chapter 4 also contains the so-called "consistency" provision in section 65860, which provides, in pertinent part, that "(a) County or city zoning ordinances *shall* be consistent with the general plan of the county or city by January 1, 1974. . . . (d) Notwithstanding Section 65803, this section *shall apply in a charter city of 2,000,000 or more population* to a zoning ordinance adopted prior to January 1, 1979, which zoning ordinance shall be consistent with the general plan of such city by July 1, 1982." (Italics added.) And, in section 65800, the Legislature states, with respect to chapter 4, that "It is the purpose of this chapter to provide for the adoption and administration of zoning laws, ordinances, rules and regulations by counties and cities, as well as to implement such general plan as may be in effect in any such county or city. Except as provided in Article 4 (commencing with Section 65910) and in Section 65913.1, the Legislature declares that in enacting this chapter it is its intention to provide only *a minimum of limitation* in order that counties

and cities may exercise the maximum degree of control over local zoning matters." (Italics added.)[3]

Pursuant to the state mandate of sections 65300 and 65302, the City of Glendale (a charter city with a population of 150,000 as of the 1980 census) adopted the requisite general plan in 1977, including the Land Use Element (LUE).

In October 1984, City announced a "Land Use/Zoning Consistency Program" to achieve consistency between the zoning designations within City with the general plan. This program was undertaken pursuant to article XV, section 2 of the charter of City, and contemplated amending the official zoning map of City. One of the proposed changes was the "down zoning" or changing of existing zoning for multiple dwellings to lower density, i.e., primarily single residential units, in the Verdugo Woodlands area of City.

At the time these events occurred, and since its adoption in 1922, section 1102 of the Zoning Appendix of the Glendale Municipal Code provided that when more restrictive zoning had been proposed in any area of City, no permit would thereafter be issued for construction, building or alteration within such area that would not conform to the requirements of the proposed zone; further, any permit issued in violation of section 1102 would be void. Section 108 of the Zoning Appendix provided that "No building permit . . . in conflict with the provisions of this Appendix shall be issued."

Plaintiffs alleged in their complaint that, contrary to section 1102, City issued several building permits for multiple dwellings to be constructed in the Verdugo Woodlands area to Developers commencing in late October 1984, despite the proposed down zoning of the area which was necessary to bring the existing zoning into consistency with the LUE of the general plan. This matter was brought to the attention of City's city council by plaintiffs who complained that the issuance of building permits violated the law; the city council immediately amended section 1102, by adopting ordinance No. 4675. The Ordinance, adopted as an "emergency" measure, provides, in pertinent part, that:

"Notwithstanding the provisions hereinabove stated, whenever the council has taken action to amend the general plan and where such amendment contemplates zoning which is more restrictive than the existing zone, the provisions of this section [Section 1102] shall not apply. The council may,

---

[3]Section 65910 mandates "open-space" zoning. Section 65913.1 provides the guidelines for local encouragement of low income housing.

on a case by case basis, determine and instruct staff to withhold the issuance of a building permit pending adoption of a more restrictive zoning ordinance affecting specific parcels of property. . . . [¶] This ordinance shall become effective upon its passage as an emergency measure for the immediate preservation of the public peace and safety. The proposed amendment to the general plan and zoning ordinance now being processed would prohibit the issuance and processing of building permits pursuant to the provisions of section 1102 of the zoning appendix as it now exists and cause undue and unnecessary hardship on applicants requesting building permits on parcels affected by said ordinance. The council finds the provisions of said section 1102 were not intended to apply when amendment to a general plan was being considered.''

It further provided that it was effective immediately, as of December 11, 1984. Thereafter, City received more applications for the issuance of building permits for multiple construction in the Verdugo Woodlands, the merits of which were now to be determined by City on a "case-by-case" basis without reference to the City's general plan LUE which contemplated lower, rather than higher, density. Plaintiffs then sought and obtained temporary injunctive relief.

## THE TRIAL COURT'S DETERMINATION

Plaintiffs relied below on a series of Court of Appeal decisions which have held that a local governmental unit's zoning practices must be consistent with the general plan it has adopted pursuant to the state mandate. Defendant City relied upon the exemption for charter cities contained in section 65803 of the Government Code.

The trial judge commented on the confusion of the statutory provisions, and also observed that it seemed clear that the Legislature favored consistency between a community's general plan and its zoning; however, he felt obligated to recognize the clearly stated exemption granted to charter cities from zoning consistency requirements. He declared that: "the only sense I can make out of the law is that 65803 means what it says unless and until the Legislature changes it, and it's not for me to do.'' Noting that City had *not* adopted state planning and zoning regulations by charter or ordinance, and was a charter city within the meaning of section 65803, the trial court refused to permanently enjoin City from issuing building permits pursuant to the procedure authorized by the Ordinance amending section 1102 of City's Zoning Appendix.

## STANDARD OF REVIEW

It may be seen there are no facts at issue. The trial court made a determination of law, i.e., that the exemption granted to charter cities by section 65803 precluded plaintiffs from obtaining relief from City's zoning practices because of City's exempt status pursuant to the section. ■ The scope of an exemption provided by statute is a question of statutory interpretation and also one of law. In reviewing the trial court's ruling, the appellate court has an independent function, and need not defer to the trial court's ruling. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 292, p. 303 et seq.) ■ We are mindful also that the rule applicable when construing the scope of a statutory exemption is that of "strict construction." (*Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417].)

## ISSUE ON APPEAL

The question presented on this appeal is whether or not the exemption granted charter cities by the Legislature when it enacted section 65803 extends to City's conduct in this particular case, which consisted of granting building permits for proposed construction inconsistent with City's LUE in its general plan.

## DISCUSSION

■ Plaintiffs contend on this appeal that the multiple dwelling development being allowed currently in the Verdugo Woodlands area is inconsistent with City's general plan and is of a higher density than that provided in the City's 1984 Zoning Consistency Program. It is further argued that City, as a *charter* city, is *still* mandated by state law to have a general plan with all of the elements specified in section 65302 and that the decisional law has interpreted the mandate of section 65302 to prohibit City, by implication, from authorizing *development* which is inconsistent with its General Plan. Plaintiffs characterize the action of City's city council in amending section 1102 of City's Zoning Appendix as invalid.

The major holding relied upon by plaintiffs is *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514], wherein the Court of Appeal found an implied obligation on the part of a charter city to complete public works projects consistent with the city's general plan. The *Friends* decision does not discuss the possible impact of section

65803 on its decision. Nor do the other cases cited by plaintiffs deal with the problem of the exemption granted by the Legislature to charter cities.[4]

The references in the case law to the section 65803 exemption have, in fact, been few. In *Lagrutta* v. *City Council* (1970) 9 Cal.App.3d 890, 896 [96 Cal.Rptr. 627], the Court of Appeal relied upon the exemption to support defendant City's position in a land use dispute. The Supreme Court of California recognized the existence of the exemption for chartered cities in *San Diego Bldg. Contractors Ass'n.* v. *City Council* (1974) 13 Cal.3d 205, 210, fn. 2 [118 Cal.Rptr. 146, 529 P.2d 570], app. dism. (1976) 427 U.S. 901 [49 L.Ed.2d 1195, 96 S.Ct. 3184].) ■ And, in *City of Los Angeles* v. *State of California* (1982) 138 Cal.App.3d 526, 531 [187 Cal.Rptr. 893], the Court of Appeal recognized that state zoning regulations do *not* apply to any of the charter cities in the state *except* Los Angeles.[5]

■ We share the trial court's view that the Legislature's ultimate objective is consistency in state planning and in the planning and land use practices of smaller, local governmental entities. ■ The Legislature has also, however, expressed concern that power and responsibility for local land use decisions remain in the communities where citizens have to live with those decisions. The exemption granted to charter cities in 1965 reflected such concern, which has, as we have seen, also been set forth throughout chapters 3 and 4 of title 7. We have stated that an exemption is subject to strict, i.e., narrow, construction. ■ It also is true that wherever possible, a statute must be harmonized with other statutes contained in the legislative scheme.

---

[4]Other cases include *Neighborhood Action Group* v. *County of Calaveras* (1984) 156 Cal.App.3d 1176, 1184-1186 [203 Cal.Rptr. 401]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584 [197 Cal.Rptr. 303]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856]; *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64 [141 Cal.Rptr. 282]; *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1982) 137 Cal.App.3d 964, 968, fn. 3 [187 Cal.Rptr. 379]; *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334 [176 Cal.Rptr. 620].)

At oral argument, counsel for plaintiffs provided this court with two additional citations, *DeBottari* v. *City Council* (1985) 171 Cal.App.3d 1204 [217 Cal.Rptr. 790] and *Buena Vista Gardens Apartments Assn.* v. *City of San Diego Planning Dept.* (1985) 175 Cal.App.3d 289 [220 Cal.Rptr. 732]. Neither of these cases discuss the impact of the section 65803 "exemption" of charter cities, either.

[5]We agree with this conclusion, but point out there is a patchwork of provisions in chapters 3 and 4 which *expressly* provide that those provisions apply to charter cities. For example, section 65804, enacted in 1971, which contains minimal standards for zoning appeals procedure, is expressly stated to be applicable to charter cities. A strong argument can be made, of course, that the Legislature is not unaware of the exemption, as is demonstrated by the distinction made between charter cities and other local governmental entities throughout chapters 3 and 4.

We cannot say that the section 65803 exemption is not applicable in the case at bench, when by its plain language it is. It is applicable in chapter 4, which includes the "consistency" provision mandating consistency between a community's general plan and its zoning. Defendant City's conduct in digressing from the LUE of its general plan to assist defendant Developers squarely falls within the ambit of chapter 4 exemption. While one may question the legislative wisdom in continuing, at this point in time, the leeway granted in 1965 to charter cities, we believe that the trial judge was correct in saying that he could not substitute his will for that of the Legislature.

Defendant City's argument that in adopting the LUE in 1977 it was not adopting an ironclad plan, or one "engraved in stone," does not dispel the implications which appear from defendants' conduct.

The result of the exemption in this case is that City, its city council and other involved individuals and agencies have allowed a group of Developers to hasten toward the finish line ahead of possible zoning changes which may ultimately prevent the building of multiple unit housing squarely in the center of the Verdugo Woodlands area. The Legislature, in light of this situation in one charter city, may well wish to reexamine the issue of the exemption for charter cities from zoning regulation. However, in the face of clear statutory language exempting charter cities from "the provisions of this chapter" ["Zoning Regulations"], we cannot say that by implication, the state law concerning consistency may be imposed on City or may be deemed to have been adopted by City when it adopted the state-mandated general plan. Plaintiffs' argument, therefore, must fail in this court.

### DISPOSITION

The judgment is affirmed.

Devich, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied April 23, 1986, and appellants' petition for review by the Supreme Court was denied June 26, 1986. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.