TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-904 |
| of | : | |
| | : | January 13, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE RICHARD RAINEY, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May two cities and a county enter into an agreement to amend their respective general plans providing for permanent open space in a particular geographical area, with any further amendment to such portion of each entity's general plan not permitted to take effect unless parallel amendments are adopted by the other two entities?

CONCLUSION

Two cities and a county may not enter into an agreement to amend their respective general plans providing for permanent open space in a particular geographical area, with any further amendment to such portion of each entity's general plan not permitted to take effect unless parallel amendments are adopted by the other two entities.

ANALYSIS

We are informed that two cities and a county are considering whether to enter into an agreement, termed a Memorandum of Understanding ("MOU"), designed to preserve a large, undeveloped area of land as permanent open space. The Ridgelands Area contains 13,000 acres, lies within the boundaries of the three jurisdictions, and is considered to be a valuable natural resource and a regional asset. Under the MOU, each entity would use its best efforts to incorporate specified goals and policies into its own general plan and assist the other entities' efforts to accomplish the same. Further cooperation would be pledged with respect to such matters as creating parallel zoning regulations for private uses within the Ridgelands Area, submitting to the appropriate jurisdictions for review and comment any land use proposals that would affect surrounding communities, and maximizing public access to the Ridgelands Area.

One provision of the MOU would affect future amendments of the three general plans in question. It states:

"If the General Plan of each party is amended [to incorporate the specified open-space goals and policies], then any further amendment to that portion of each party's General Plan applicable to the Ridgelands Area shall provide that said amendment shall not be effective unless there are parallel amendments adopted by the other parties."

We are asked to consider whether this provision would constitute an unlawful surrender of legislative authority. We conclude that it would.[1]

The general plan of a city or county has been described as "the basic land use charter governing the direction of future land use in cities and counties." (Longtin, *California Land Use* (2nd ed., 1987) § 2.02[2], p. 173.) Each city and county is required to prepare and adopt a general plan for its future physical development (Gov. Code, § 65300),[2] and all regulatory controls and development approvals must be consistent with such general plan (§ 65860).[3] The legislative body of a city or county is authorized to make amendments to all or part of an adopted general plan if it deems it to be in the public interest. (§ 65358, subd. (a).) The adoption or amendment of a general plan constitutes a legislative act. (§ 65301.5; Longtin, *supra*, § 2.31, p. 198.)

With respect to the proposed MOU provision, we first observe that no state statute or city charter provision authorizes such an agreement. We are not presented here, for example, with a joint planning agency (§ 65101), a development agreement (§§ 65864-65869.5; see *City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1193, fn. 6; *Native Sun/Lyon Communities* v. *City of Escondido* (1993) 15 Cal.App.4th 892, 910; *Midway Orchards* v. *County of Butte* (1990) 220 Cal.App.3d 765, 773), a joint powers agreement (§§ 6500-6599; see 75 Ops.Cal.Atty.Gen. 6 (1992); 71 Ops.Cal.Atty.Gen. 266 (1988)), or a regional land use planning authority established to regulate development in an area of statewide concern (e.g., §§ 65060-65069.5 [regional planning district]; §§ 66620-66647 [San Francisco Bay Conservation and Development Commission]; §§ 67040-67109 [Tahoe Regional Planning Agency]; Pub. Resources Code, §§ 29700-29780 [Delta Protection Commission]; Pub. Resources Code, §§ 33000-33216 [Santa Monica Mountains Conservancy]). The proposed MOU would not merely cause an "interagency referral" of a proposed action to amend a general plan or zoning ordinance. (§§ 65919-65919.11; see 76 Ops.Cal.Atty.Gen. 145, 147-152 (1993).)

Finding no statutory basis for the MOU provision, we turn to the general powers of cities and counties to adopt "police power" regulations. Section 7 of article XI of the Constitution provides:

---

[1]In light of the conclusion reached, it is unnecessary to answer a further question presented concerning the possible applicability of the California Environmental Quality Act (Pub. Resources Code, § 21000, et seq.) to the proposed agreement.

[2]All undesignated section references hereafter are to the Government Code.

[3]A charter city is statutorily exempt from the zoning consistency requirement. (*Verdugo Woodlands Homeowners and Residents Association* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 703-704.)

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with the general laws."

Local governments may regulate land uses within their jurisdictions by exercising their police power authority under the Constitution. (See *Griffin Development Company* v. *City of Oxnard* (1985) 39 Cal.3d 256, 261-264; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 868-869; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140.)

A city or county, however, may not surrender by contract, ordinance, or otherwise, the future use of its police power authority. (See *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 929; *In re Collie* (1952) 38 Cal.2d 396, 398; *McNeil* v. *City of South Pasadena* (1913) 166 Cal. 153, 155-156; *Thompson* v. *Board of Trustees* (1904) 144 Cal. 281, 283; *City and County of San Francisco* v. *Patterson* (1988) 202 Cal.App.3d 95, 105; *Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 843; 61 Ops.Cal.Atty.Gen. 51, 54-55 (1978); 32 Ops.Cal.Atty.Gen. 145, 150-151 (1958).) Eighty years ago in *McNeil* v. *City of South Pasadena, supra*, 166 Cal. 153, the court explained:

"The improvement, regulation, and control of the highways within a municipality call for the exercise of a delegated government power, a function which the municipality itself, neither by ordinance nor by contract, can surrender or impair. . . . It is its duty to exercise those powers upon every proper occasion. It could as well attempt to surrender all or part of its police powers as to attempt to bind itself not to perform the administrative duty and trust in regard to its public streets imposed upon it by general law."

In particular, the use of contracts may not impair or restrain the exercise of the constitutional police power. (See, e.g., *Avco Community Developers, Inc.* v. *South Coast Regional Commission* (1976) 17 Cal.3d 785, 800; *Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823; *Carty* v. *City of Ojai* (1978) 77 Cal.App.3d 329, 342.) In *Delucchi,* property owners and a county entered into a contract causing the land to be restricted to agricultural and compatible uses. Thereafter the California Coastal Act (Pub. Resources Code, § 30000, et seq.) was enacted, and the county imposed conforming zoning regulations. The landowners brought suit, contending that their contract contained a promise by the county not to alter the original zoning. The court responded:

". . . Land use regulations, including the power to zone, involve the exercise of the sovereign's police power. [Citations.] A government `may not contract away its right to exercise the police power in the future. [Citations.]' [Citations.] Moreover, contracts purporting to do so are invalid and unenforceable as contrary to public policy. [Citation.] `"`The police power being in its nature a continuous one, must ever be reposed somewhere, and cannot be barred or suspended by contract or irrepealable law. It cannot be bartered away even by express contract.' [Citations.] It is to be presumed that parties contract in contemplation of the inherent right of the state to exercise unhampered the police power that the sovereign always reserves to itself for the protection of peace, safety, health and morals. Its effect cannot be nullified in advance by making contracts inconsistent with its enforcement . . . ." [Citations.]' [Citations.]" (179 Cal.App.3d at 823.)

Although the proposed MOU would be between public entities rather than between a public entity and a private party, we believe that the reasoning of *Delucchi* would apply here as well. When a city council or a county board of supervisors determines that a general plan open-space designation no longer serves the public interest in its jurisdiction, a prior agreement executed with another

legislative body may not prevent the city or county from effectively exercising its authority to make the necessary general plan and zoning changes.

In *City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d 898, the Supreme Court examined the broader rule involving the surrender of a public entity's legislative authority:

> "It is a familiar principle of law that no legislative board, by normal legislative enactment, may divest itself or future boards of the power to enact legislation within its competence. [Citations.] Thus, a school board cannot, by resolution, bar itself or future boards from adopting subsequent resolutions which may alter earlier established policies. Yet the portion of the resolution presently at issue purports to effectuate just such a result; it seeks to place all the terms of the present resolution beyond the reach of future board actions, except as the certificated employee council agrees to such future action. Under the authorities cited above, such a provision cannot stand."[4]

The MOU provision in question, like the one in *Cooper*, would make future legislative action subject to the approval of "outside" entities and would thereby effect a partial surrender of each government's ultimate decision-making authority. Adherence to the MOU would cause subsequent legislative acts (i.e., general plan amendments) to bear a proviso making such enactments effective only upon the adoption of parallel amendments by the governing bodies of the other jurisdictions. Accordingly, the MOU provision would impair the future exercise of legislative authority; such impairment is precisely what may not be done.[5]

In answer to the question presented, therefore, we conclude that two cities and a county may not enter into an agreement to amend their respective general plans providing for permanent open space in a particular geographical area, with any further amendment to such portion of each entity's general plan not permitted to take effect unless parallel amendments were adopted by the other two entities.

* * * * *

---

[4]The challenged provision in *Cooper* was part of a memorandum of understanding and specified as follows:

> "`No change, revision, alteration or modification of this Memorandum of Understanding shall be valid unless the same is ratified by the Board and by action of the constituent organizations of the Certificated Employees Council under the internal rules of the Council, and endorsed in writing by the Board's representative and the chairman of the Certificated Employees Council.'" (*Id.*, at p. 929, fn. 17.)

[5]We do not view the proposed MOU provision as a "voluntary" restraint to be exercised only if all parties continue to agree to the limitation. The latter type of compact would not involve a surrender of legislative power; it would not prevent legislative action which a city or county wished to take in the future. (See, e.g., *Dateline Builders, Inc.* v. *City of Santa Rosa* (1983) 146 Cal.App.3d 520, 524.) In contrast, the primary objective of the provision here would be to prevent each entity from altering a prior legislative decision without the approval of the two other entities.