Filed 11/20/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE KENNEDY COMMISSION et al., | E065358 |
| Plaintiffs and Respondents, | (Super.Ct.No. 30-2015-00801675) |
| v. | ORDER MODIFYING OPINION AND DENIAL OF PETITION |
| CITY OF HUNTINGTON BEACH et al., | FOR REHEARING |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

The petition for rehearing filed by plaintiffs and respondents on November 14, 2017, is denied. The opinion filed in this matter on October 31, 2017, is modified as follows:

1.      On page 29 the disposition is modified to read as follows:

"If Kennedy does not seek to reinstate the remaining causes of action within 30 days of the issuance of the remittitur, the case will be final and the stay issued by this court on May 26, 2016, is ORDERED lifted."

Except for this modification, the opinion remains unchanged.  This modification does not effect a change in the judgment.

CERTIFIED FOR PUBLICATION


MILLER
Acting P. J.


We concur:


CODRINGTON
J.


FIELDS
J.

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE KENNEDY COMMISSION et al., | |
| Plaintiffs and Respondents, | E065358 |
| v. | (Super.Ct.No. 30-2015-00801675) |
| CITY OF HUNTINGTON BEACH et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Orange County. James E. Chalfant and Michael L. Stern, Judges. Reversed.

Michael E. Gates, City Attorney, Michael J. Vigliotta, Chief Assistant City Attorney, for Defendants and Appellants.

Jones Day, Roman E. Darmer, Walter C. Waidelich; Public Law Center, Kenneth W. Babcock; California Affordable Housing Law Project, Public Interest Law Project, Craig D. Castellanet, Michael F. Rawson; Legal Aid Society of Orange County and Sarah J. Gregory for Plaintiffs and Respondents.

Defendants and appellants the City of Huntington Beach and the City Council of Huntington Beach (collectively, City) appeal the grant of a petition for writ of mandate entered by the Superior Court of Los Angeles County in favor of plaintiffs and respondents The Kennedy Commission, William Adams and Jason Puloe (collectively, Kennedy) invalidating City's amendment to the Beach Edinger Corridors Specific Plan (BECSP).

Under California's Housing Element Law (Gov. Code, § 65580 et seq.),[1] City was required to pass, as part of its general plan, a housing element that makes adequate provisions for the housing needs of all income groups, including accommodating the local government's share of the Regional Housing Need Allocation (RHNA). The California Department of Housing and Community Development (HCD) approves the housing element. City adopted a general plan. The general plan included a housing element, which set forth City's plan to comply with the HCD requirement for affordable housing. A large part of the housing element adopted in the general plan provided that development of affordable housing would occur in the BECSP area. In 2015 City passed an amended BECSP, which significantly reduced the number of housing units that could be developed in the BECSP.

Kennedy filed a complaint alleging in the first cause of action that the amended BECSP was inconsistent with the housing element in violation of sections 65454, 65580, 65583, 65587 and 65860. Kennedy argued that the amended BECSP was void as it was

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

not consistent with the housing element in the general plan. Kennedy claimed the entire BECSP amendment should be invalidated. City responded that it was amending its housing element and was seeking approval from the HCD. The trial court applied section 65454, which required a specific plan be consistent with the general plan, and declared the amended BECSP was void. We granted City's petition for writ of supersedeas staying the writ of mandate.

City raises the following issues on appeal: (1) For the first time on appeal, City contends the City of Huntington Beach is a charter city, which is exempt from a consistency requirement of its specific plans to the general plan pursuant to section 65700; (2) if City was subject to the consistency requirement, the trial court erred by invalidating the entire BECSP amendment because it contained provisions that did not refer to housing; (3) the trial court's judgment and writ are overbroad and overreaching and therefore violated constitutional separation of powers; (4) the issues are not ripe for adjudication because Kennedy cannot show harm; and (5) Kennedy has no standing to bring a claim under section 65454.

## FACTUAL AND PROCEDURAL HISTORY

### A.    PETITION FOR ALTERNATIVE WRIT OF MANDATE

"On review of a judgment on the pleadings, we accept as true facts pleaded in the complaint and subject to judicial notice." (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488.)

3

On July 31, 2015, Kennedy filed a petition for alternative writ of mandate and complaint for declaratory and injunctive relief (Petition) in the Superior Court of Orange County. Kennedy provided an extensive factual background. In addition, City had augmented the record with the administrative record (AR).

The Kennedy Commission was a nonprofit corporation with the principal place of business in Irvine. The additional plaintiffs were William Adams and Jason Puleo. Adams was a disabled veteran. Adams lived on the streets in Orange County from 2008 to 2013. He received government assistance in the amount of $1,000, 25 percent of which was mandated to be used for housing. In November 2013, he moved into an apartment complex in Huntington Beach. In April 2015, he received a 90-day notice to vacate the apartment. He searched for another apartment in Huntington Beach for two months but could not find an affordable apartment. He eventually found housing in the City of Orange.

Puleo was also a veteran who received government assistance. In June 2012, he also found an apartment in Huntington Beach in the same complex as Adams. He received a 90-day notice to vacate in April 2015. Puleo searched for another apartment in Huntington Beach for several months. He found an apartment in Stanton on July 1, 2015, but desired to live in Huntington Beach.

City had a general plan for the development of Huntington Beach. Section 65580 required every city and county to adopt and update a housing element as part of the general plan. The housing element must assess the local housing need and implement programs to remove constraints and promote development. The housing element must be

4

periodically updated and "subject to review" by the HCD. According to section 65584, the HCD determined the RHNA for each region of California. Governments in each region allocated a portion of the regional need for affordable housing to each city and county in the region. Relying on sections 65583 and 65583.2, Kennedy argued that once City received its RHNA apportionment, it was required to prepare a housing element that addressed the inventory of suitable sites and the potential for development.

On September 16, 2013, City adopted its housing element in the general plan from the HCD. It was for the planning period of 2013 through 2021. It specifically referenced the BECSP as part of its housing element. The housing element stated that it would facilitate and encourage development of affordable housing in the BECSP. The BECSP was a 459-acre area in Huntington Beach. The housing element would allow for multi-family, high-density housing. It had a building height limit of six stories and no minimum setbacks. The housing element also provided for streamline review for projects in the BECSP. It included the RHNA amount of housing for low income, which was 1,353 units. This was allocated between very low income (313 units), low income (220 units), moderate (248 units) and above moderate (572 units). The housing element was approved by the HCD on November 12, 2013.

In 2015, City considered amending the BECSP due to citizen complaints that the area was developing too fast. The amended BECSP proposed to reduce the total amount of new development from 4,500 units to 2,100 units. According to the Petition, "Of the 2,100 residential units allowed under the BECSP Amendment, 1,900 have already been entitled, and another 172 units have a Formal Planning Application pending approval."

Kennedy alleged that as a result of the amended BECSP, City was unable to meet its RHNA. City had to develop 533 lower income units between the years 2014 and 2021. City's housing element provided for 783 units to be developed for lower income housing; 628 of those units were inside the BECSP. Kennedy alleged that there was only 150 units in other areas of Huntington Beach that could be made into low income housing; this left a shortfall of 350 units. Kennedy alleged this violated state law.

The amended BECSP also required a conditional use permit for future residential development. It also amended the minimum parking requirements, setbacks and height limits from six to four stories. It also required commercial space on the first floor of buildings.

On March 24, 2015, Kennedy contacted City and notified it that the amended BECSP violated the housing element. The HCD sent a letter to City indicating that the amended BECSP was " 'inconsistent with the policies and programs within the City's adopted housing element.' " Despite these warnings, the amended BECSP was passed on May 4, 2015.

On June 25, 2015, the HCD sent a letter to City advising it that by adopting the BECSP amendment on May 4, 2015, the housing element no longer complied with state law. The prior certification of the housing element was retracted because the amended BECSP changed the maximum number of allowable units to an amount less than City's remaining RHNA. City was advised it needed to revise its housing element. City advised the HCD that it was in the process of reviewing and revising the housing element.

6

The first cause of action in the Petition was for failure to act consistently with the housing element. Kennedy cited Government Code sections 65454, 65580, 65583, 65587 and 65860. Kennedy also cited Code of Civil Procedure section 1085. Relying on Government Code section 65454, it alleged that a specific plan, which here was the amended BECSP, could not be adopted unless it was consistent with the general plan. The housing element in the general plan complied with the RHNA; the amended BECSP was not consistent and reduced the number of low income housing units. Kennedy alleged Kennedy had standing because it was "directly and beneficially" interested in City's compliance with all applicable provisions of law. There was no other plain, speedy or adequate remedy.

The second cause of action relied upon sections 65581, 65583, 65587 and 65588. Kennedy sought a writ of mandate for the failure to implement the approved housing element. It sought an order from the court requiring City to implement its housing element as written. The third and fourth causes of action were based on Article XI, section 7 of the California Constitution. The amended BECSP conflicted with state law and was therefore preempted. Further, the amended BECSP violated due process. The fifth cause of action alleged unlawful housing discrimination under section 12900. Failing to provide low income housing had a discriminatory effect.

The sixth cause of action was for a violation of section 65008. Kennedy alleged that it "believed" that persons who need affordable housing in Huntington Beach were disproportionately racial and ethnic minorities. The amended BECSP had a discriminatory purpose and effect on the production of affordable housing.

7

On August 18, 2015, the case was transferred to Los Angeles Superior Court.

On October 20, 2015, Kennedy filed a memorandum of points and authorities in support of the Petition. Kennedy argued it brought the Petition to invalidate the amended BECSP because it violated the housing element and state housing law. The amended BECSP should be voided and City ordered to comply with its existing housing element already approved by the HCD.

Kennedy submitted a declaration from Glen Campora, who was employed by the HCD. On November 12, 2013, the housing element for City was approved as compliant with state law. It specifically mentioned the adoption of the BECSP to develop meaningful housing. On May 1, 2015, the HCD notified City that if it adopted the amended BECSP it would reduce the number of units to 2,100. City would need to amend its housing element immediately to identify how current and projected housing needs would be met with the elimination of the units in the BECSP. City was warned that under section 65863 it could not reduce the maximum allowable units unless it provided how the RHNA was going to be met.

On June 23, 2015, City was notified by the HCD that it no longer complied with state housing laws. It was advised, "The City must submit an amended element to the Department for a determination that City changes to the housing element meet statutory requirements." It also was advised, "Local government decisions that change substantive provisions of the housing element in which the Department relies on in determining compliance necessitate amending the housing element." City was advised to "immediately" submit an amended housing element.

8

On September 4, 2015, Kennedy filed a request to expedite the hearing on the Petition in accordance with section 65753, subdivision (a). City objected as it needed time to prepare the administrative record and was working to amend the housing element. City also argued that the expedited hearing under section 65753 only applied to a challenge to the general plan, not a specific plan. The trial court granted the expedited hearing date on the Petition.

B.    OPPOSITION TO PETITION

City filed its opposition to the Petition on October 29, 2015 (Opposition). City argued it was actively working to amend the housing element to meet RHNA goals. It argued the HCD instructed City to amend its housing element, not to rescind the amended BECSP. An extraordinary writ was unnecessary. City prepared the amended BECSP because of rapid development in the BECSP and concern from citizens. Relying on section 65754,[2] City argued that the only remedy was to allow it to amend its housing element. It was not necessary to void the amended BECSP because consistency could be achieved by amendment of the housing element. City was not arguing that the amended BECSP was an implied amendment to the housing element. City also argued that the claims were moot because it was amending the housing element.

City attached a letter sent to Kennedy by City on September 14, 2015, which advised Kennedy it was releasing a draft of the amended housing element. The open

_____

[2] Section 65754 requires that if a housing element in a general plan of any city does not comply with section 65300 et. seq., City will have an opportunity to amend its housing element.

9

comment on the amendment would extend until October 14, 2015. The draft was sent to Kennedy on September 17, 2015.

City submitted a declaration from Jennifer Villasenor, who was a planning manager employed by City. In early May 2015, immediately following the approval of the amended BECSP, City retained an outside housing element expert to amend the housing element; specifically, to identify additional sites for affordable housing. City was in contact with the HCD in June and August 2015 to discuss amendments to the housing element so that City could meet the RHNA requirements. On September 15, 2015, the proposed amendment to the housing element was submitted to the HCD and included a list of all the sites for affordable housing. The HCD suggested changes, and on October 26, 2015, City submitted a new amendment of the housing element for review by the HCD. It identified affordable housing sites all outside the BECSP area. City requested the HCD comment on the draft by November 10, 2015.

Also attached was a copy of the public notice sent advising residents of Huntington Beach that the housing element was going to be amended. It sought comments until October 14, 2015.

Moreover, City attached a map of the potential affordable housing sites. Each individual site was identified and the number of units that could be placed on the sites was provided. A copy of the amendment drafted September 14, 2015, was also attached, which detailed the additional vacant or underdeveloped sites throughout Huntington Beach that could accommodate for the loss of units in the BECSP.

10

On September 16, 2015, the HCD received a draft amendment to the housing element from City. It had not been approved as of the filing of the Opposition. An amendment drafted on October 26, 2015, was included with the Opposition. An inventory of available sites outside the BECSP was provided with the amendment to the housing element.

C.      REPLY TO OPPOSITION

Kennedy filed a reply to the Opposition (Reply). Kennedy noted that in the Opposition, City conceded it was out of compliance with state law in that the amended BECSP did not comply with the housing element. The amended BECSP was invalid. Kennedy was concerned that City would not amend the housing element in a timely fashion or that the new proposed affordable housing areas would not provide the lost units in the BECSP. Kennedy sought to have no new building permits issued in the BECSP area because it would take the place of affordable housing. Kennedy relied on section 65454 that the amended BECSP was inconsistent with the housing element. City had to accommodate affordable housing throughout the planning period. Kennedy sought to have the amended BECSP voided.

D.      RULING

The matter was called on November 12, 2015. The trial court adopted its tentative ruling without a hearing. The trial court set forth the facts in the tentative ruling as follows: City adopted its current housing element for the 2014 through 2021 planning period on September 16, 2013. It was approved by the Department of Housing in November 2013. City's share of the RHNA was 1,353 units. The allocation of very low

11

or low income households was 533 units. The BECSP was identified in the housing element as providing for a majority of the low income housing. The amended BECSP reduced the number of units to be developed from 4,500 to 2,100. Of those, all but 28 dwelling units were already being developed. As a result of the amended BECSP, City was unable to meet its fair share of the RHNA, particularly as to low income housing. It lowered the density in the BECSP and increased fees to developers. City could only offer 115 sites for low income housing. City was notified by Kennedy and the HCD that the housing element no longer complied with state law. City issued two drafts of the amended housing element on September 14, 2015, and October 26, 2015. It was awaiting approval by the HCD.

The trial court found, "Once a jurisdiction adopts a general plan including a housing element and obtains approval from HCD, the jurisdiction is prohibited from adopting a specific plan that is inconsistent with the general plan, including its housing element. Govt. Code, §§ 65454, 65860." It noted that Kennedy sought a writ declaring the amended BESCP void and directing City to implement the housing element as written.

The trial court first noted that Kennedy had gained priority for the case by arguing it was challenging the housing element under section 65751. City argued that Kennedy was limited to argument under that section and that the only remedy was in section 65754, which gave it time to amend the housing element. The trial court noted that Kennedy's argument was that the amended BECSP was inconsistent with the housing element not that the housing element was improper. The trial court concluded, "A

12

challenge to a specific plan on the grounds of inconsistency with the general plan is made under Govt. Code section 65860(b), and is not entitled to any preference. Petitioners have unlawfully 'line jumped' by arguing for preference. Nonetheless, it is not appropriate to treat a challenge to a specific plan as governed by the remedies for a successful challenge to a general plan."

The trial court then addressed the merits. It noted that under California law, a "municipality may not amend a specific plan unless the amendment is consistent with the general plan. Govt. Code, § 65454." The trial court noted that despite the fact City was actively working to amend the housing element, the amended BECSP was inconsistent with the general plan at the time it was passed and was therefore void as of the time it was passed. It noted, "Despite the [C]ity's attempts to amend the general plan to provide consistency with the ordinance, the Supreme Court held that the zoning ordinance was invalid when it was passed. It is the preemptive effect of state law (Govt. Code, § 65860) which invalidates the ordinance." The trial court refused to address anything regarding City amending its housing element as that issue was not raised by Kennedy.

The court concluded, "The petition for writ of mandate is granted. The BECSP Amendment is void *ab initio*. A writ shall issue directing the City to cease enforcing, administering, or implementing the BECSP Amendment. The writ will not include any relief compelling the City to implement the 2013 housing element, the BECSP, or BECSP's Policies and Programs committing the City to accommodate its RHNA."

Kennedy prepared an order, but City refused to sign it arguing the case was not complete because the remaining causes of action needed to be resolved either by

13

dismissal or transfer to a trial court. Kennedy responded that it did not believe that the court's ruling granting "the writ demanded in Count One" mooted the other pending causes of action or foreclosed the issuance of a writ of mandate. Despite this argument, on January 13, 2016, Kennedy moved to dismiss causes of action in three through six after the trial court indicated it would not issue the writ of mandate until the case was finished. The dismissal that was signed and filed on January 15, 2016, dismissed causes of action three through six without prejudice.[3]

On January 20, 2016, the trial court issued a writ of mandate commanding City to cease enforcing, administering or implementing the amended BECSP including the amended BECSP "Amendment's Maximum Amount of New Development, Conditional Use Permit, Zoning Text Amendment, Environmental Assessment, and the height, parking, setback and use restrictions, and to otherwise cease utilizing or relying" on the amended BECSP in planning.

---

[3] The trial court's tentative ruling was not entirely clear as to whether it was deciding the second cause of action by using the language "[t]he writ will not include any relief" or if it was denying relief. However, Kennedy agreed to dismiss causes of action three through six, and Kennedy did not appeal the second cause of action. Based on the foregoing, the trial court denied relief on the second cause of action.

**DISCUSSION**

<u>CONSISTENCY REQUIREMENT AND ITS APPLICATION</u>

<u>TO HUNTINGTON BEACH, A CHARTER CITY</u>[4]

City abandons its main argument raised in the lower court that it should be given time to amend the housing element as allowed in section 65754, rather than having the amended BECSP considered void as a matter of law. Instead, City argues for the first time on appeal that sections 65860 and 65454, which require consistency of zoning ordinances and specific plans to the general plan, respectively, do not apply to Huntington Beach as it is a charter city. Kennedy insists this issue cannot be reviewed for the first time on appeal. Moreover, if this court decides to address the issue, City was not exempt because it adopted the consistency requirement. We note that the relevant section here is the violation of section 65454, as Kennedy argued that the specific plan was inconsistent with the general plan.

Initially, City asks us to take judicial notice of charter documents that show Huntington Beach is a charter city and, additionally, to notice that the population of Huntington Beach is less than 2,000,000. These documents were not provided to the trial court.

----

[4] We do recognize the City has claimed that these issues are not ripe for adjudication, and that Kennedy lacked standing to bring a claim under section 65454. We adopt the same reasoning in *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1580-1581, and find the issues are ripe for adjudication and Kennedy has standing.

" 'In determining the propriety of taking judicial notice of a matter, or its tenor, the reviewing court has the same power the trial court has under Evid C § 454.  Evid C § 459(b).' " (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881-882.)  Evidence Code section 459, subdivision (a), provides, "The reviewing court shall take judicial notice of (1) each matter properly noticed by the trial court and (2) each matter that the trial court was required to notice under Section 451 or 453.  The reviewing court may take judicial notice of any matter specified in Section 452.[5]  The reviewing court may take judicial notice of a matter in a tenor different from that noticed by the trial court."  Subdivision (d) of section 459 provides, "In determining the propriety of taking judicial notice of a matter specified in Section 452 or in subdivision (f) of Section 451 that is of substantial consequence to the determination of the action, or the tenor thereof, if the reviewing court resorts to any source of information not received in open court or not included in the record of the action, . . . the reviewing court shall afford each party reasonable opportunity to meet such information before judicial notice of the matter may be taken."  "An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance." (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326.)

---

**5** Subdivision (b) of Evidence Code section 452 provides, "Regulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States."

The court may take judicial notice of a city charter or municipal code. (See *LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 941, fn. 3 [judicial notice of provisions of charter]; *Madain v. City of Stanton* (2010) 185 Cal.App.4th 1277, 1280, fn. 1 [judicial notice of municipal code for the first time on appeal].)

This court has the discretion to take judicial notice of the City of Huntington Beach charter and the population. While this court is cognizant of the fact that City should have raised this argument in the trial court, and presented the charter documents to the trial court in the first instance, we exercise our discretion to review the issue. Kennedy argued below that the case was entitled to an expedited hearing date pursuant to section 65751, which refers to a challenge to a general plan. Charter cities are still subject to preparing a general plan in accordance with state law. (§§ 65300, 65302.) City argued that Kennedy was restricted to arguing under these sections since it was granted an expedited hearing. The trial court acknowledged that Kennedy unlawfully "line jumped" but decided the merits of the attack on the specific plan under section 65454. City argues that this was its first chance to argue the merits of the consistency requirements for specific plans. Although not a justification for failing to raise the charter city issue below, it does support giving some latitude to City on appeal since the trial court refused to restrict the issues. We therefore grant City's request for judicial notice.

Moreover, Kennedy has had a chance to object to the request for judicial notice in this court and has responded to the claim in its brief, which complies with Evidence Code

17

section 459, subdivision (d).  Additionally, we will grant Kennedy's request for judicial notice of chapters 201, 203, and 215 of the City of Huntington Beach's zoning ordinance.

Finally, "The scope of an exemption provided by statute is a question of statutory interpretation and also one of law.  In reviewing the trial court's ruling, the appellate court has an independent function, and need not defer to the trial court's ruling." (*Verdugo Woodlands Homeowner etc. Assn. v. City of Glendale* (1986) 179 Cal.App.3d 696, 702 (*Verdugo*); see *California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375.)  As such, we will address whether the trial court properly issued a writ of mandate against City for adopting a specific plan that was inconsistent with the housing element in the general plan.

"Section 65300 mandates that '[e]ach county and city shall adopt a comprehensive, long-term general plan for the physical development of the county or city, . . .'  Section 65300.7 declares that 'The Legislature finds that the diversity of the state's communities and their residents requires planning agencies and legislative bodies to implement [a mandated general plan] in ways that accommodate local conditions and circumstances, while meeting its minimum requirements.'  As it then read, section 65302 sets forth the minimum requirements a general plan must include, enumerating basic areas of concern, and declares that 'The requirements of this section shall apply to charter cities.'  (Sections 65301 and 65302 were amended in 1984 and 1985; section 65301 now declares that the general plan requirement is applicable to charter cities).  All of the above referenced sections are contained in chapter 3" of title 7, division 1 of the Government Code.  (*Verdugo*, *supra*, 179 Cal.App.3d at p. 699.)

18

Section 65860, subdivision (a), provides, "County or city *zoning ordinances* shall be consistent with the general plan of the county or city by January 1, 1974." However, section 65803 provides, "Except as otherwise provided, this chapter shall not apply to a charter city, except to the extent that the same may be adopted by charter or ordinance of the city." Subdivision (d) of section 65860 provides, "Notwithstanding Section 65803, this section shall apply in a charter city of 2,000,000 or more population to a zoning ordinance adopted prior to January 1, 1979, which zoning ordinance shall be consistent with the general plan of the city by July 1, 1982." "Section 65860 imposed a duty on local governments to make their *zoning ordinances* consistent with the general plan by January 1974, and requires them to continue to amend zoning ordinances consistently with any amendments to the plan." (*Mira Development Corp. v. City of San Diego* (1988) 205 Cal.App.3d 1201, 1213-1214, fn. omitted, italics added.)

Relevant here, section 65454 applies to specific plans. Section 65454 provides, "No specific plan may be adopted or amended unless the proposed plan or amendment is consistent with the general plan." "A zoning ordinance that conflicts with a general plan is invalid at the time it is passed. [Citation.] The court does not invalidate the ordinance. It does no more than determine the existence of the conflict. It is the preemptive effect of the controlling state statute, the Planning and Zoning Law, which invalidates the ordinance." (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 544.)

19

However, there is an exemption for charter cities.  Section 65700 states, "The provisions of this chapter shall not apply to a charter city, except to the extent that the same may be adopted by charter or ordinance of the city; except that charter cities shall adopt general plans in any case, and such plans shall be adopted by resolution of the legislative body of the city, or the planning commission if the charter so provides, and such plans shall contain the mandatory elements required by Article 5 (commencing with Section 65300) of Chapter 3 of this title."

"Government Code section 65700, subdivision (a), makes plain, however, that none of the planning law's procedural requirements, except the provision that the plan be adopted by resolution of the legislative body or planning commission, apply to charter cities.  The planning law distinguishes between the adoption of a plan and its amendment, and when its provisions are meant to apply both to adoption and amendment, they explicitly state so.  [Citations.]  Accordingly, Government Code section 65700, subdivision (a), leaves the nature of the general plan amendment process entirely to the discretion of charter cities.  Because the Legislature implicitly declared that the process of plan amendment was not a matter of statewide concern, we have no reason to infer that it sought to control that process by precluding initiative amendments.  In other words, the freedom given charter cities to control the general plan amendment process—including the freedom, presumably, to allow amendment by initiative if the city charter so provides—belies the claim that the Legislature intended to delegate the general plan amendment authority exclusively to local governing bodies in order to fulfill the

20

statewide objectives of the planning law." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 784.)

Here, section 103 of the Huntington Beach charter provides, "The City shall have the power to make and enforce all laws and regulations in respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter or in the Constitution of the State of California." It is clear from this language that City did not intend to adopt the Government Code in its *charter*. Hence, the issue in this case is whether City adopted this consistency requirement in an *ordinance*.

The case of *Garat v. City of Riverside* (1991) 2 Cal.App.4th 259 (*Garat*), overruled on other grounds in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, is relevant to this issue. As stated in *Garat*, the City of Riverside (Riverside) was a charter city. (*Garat*, at pp. 269-270.) "In 1969, [Riverside] formally adopted a general plan—a comprehensive and long-term amalgam of policies, goals, standards, guidelines and maps designed to form a cohesive and integrated framework within which to plan for the future physical development of [Riverside] (Gov. Code, §§ 65300-65301)—in accordance with the requirements of chapter 3 ('Local Planning,' beginning with § 61000), division 1 ('Planning and Zoning,' beginning with § 65000), title 7 ('Planning and Land Use,' beginning with § 65000) of the Government Code." (*Id.* at p. 271, fn. omitted.) In 1979, the voters adopted Measure R, which applied an agricultural zoning classification to various portions of Riverside to help control development. In November 1987, the voters adopted Measure C, which further protected against development. (*Id.* at p. 271.) Arlington Heights Consortium filed a lawsuit, which in part had a cause of

21

action for a petition for writ of mandate directing Riverside to void Measures R and C. (*Id.* at p. 272.) The "Garat consortium" also filed suit seeking to void Measure C. The suit was focused on whether the general plan was invalid and "whether Measures R and C were themselves invalid because it was inconsistent with the (allegedly) invalid general plan." (*Id.* at p. 272.)

Riverside filed a motion for summary judgment arguing in part that the "statutory requirement of consistency between zoning ordinances and their underlying general plans (§ 65860) was not applicable to charter cities." (*Garat*, *supra*, 2 Cal.App.4th at p. 273.) The trial court concluded that Measures R and C were required by law to be consistent with the general plan. The measures were found to be void. (*Id.* at pp. 273-274.) The trial court ordered that Measures R and C be rescinded. (*Id.* at p. 274.)

On appeal, this court addressed whether a city's legislative zoning enactments have to be consistent with the provisions of its general plan. We first noted that sections 65860 and 65803 exempted charter cities from the consistency requirement. We determined that it was undisputed that Riverside was a charter city. We then addressed whether Riverside had adopted a consistency requirement by ordinance. (*Garat*, *supra*, 2 Cal.App.4th at p. 281.)

This court found that Riverside had not adopted a consistency requirement in its zoning ordinance. We concluded, "The sole question remaining in determining whether the exemption provisions of section 65803 apply to [Riverside], then, is whether [Riverside] has adopted a consistency requirement by way of ordinance. Garat argues that such is the case, and in support of its argument points to several provisions in

22

[Riverside]'s zoning laws that require that adjudicative/administrative approvals of applications for certain types of conditional use permits and minor variances be consistent with [Riverside]'s 'master plan.' These scattered references to consistency, however, fall far short of section 65803's provision that a specific requirement of consistency between the zoning enactments and the general plan of a charter city will be found to exist only if that requirement is 'adopted by charter or ordinance.' On the face of [Riverside]'s extant charter/statutory scheme, then, there is no requirement that [Riverside]'s zoning enactments be consistent with its general plan." (*Garat*, *supra*, 2 Cal.App.4th at pp. 281-282.)

This court also rejected that the adoption of specific plans in accordance with section 65450 shows that Riverside intended to adopt the consistency requirement in section 65454. We rejected this argument as follows: "Garat also argues that [Riverside]'s adoption of various 'specific plans'—a specific plan being a more focused and detailed development 'scheme' for a particular, limited portion of the greater area encompassed by the broader overall development 'scheme' of a general plan—pursuant to Article 8 ('Specific Plans,' beginning with section 65450), chapter 3, division 1, title 7 of the Government Code means, by logical necessity, that [Riverside] has adopted a zoning enactment/general plan consistency requirement. The logic of Garat's argument unfolds in this way: (a) [Riverside] has adopted specific plans (e.g., the Sycamore Canyon Specific Plan) 'in accord with California State requirements for specific plans (Government Code § 65450)'; (b) the adoption of specific plans is not subject to the general exemption from state zoning laws which is provided in section 65803 for charter

23

cities; (c) specific plans must be consistent with their inclusive general plans (§ 65454); (d) no zoning enactments may be adopted or amended with respect to an area within a specific plan unless the zoning enactment would be consistent with the specific plan (§ 65455); (e) consequently, [Riverside], by adopting specific plans in accordance with state law, has indirectly adopted an overall zoning enactment/general plan consistency requirement by ordinance. There are at least two flaws in this argument. First, assuming arguendo that [Riverside] has implicitly adopted a zoning enactment/general plan consistency requirement within certain specific plan areas, this simple fact does not compel the conclusion that [Riverside] has, as a general matter, adopted such a requirement for the entire general plan area. Second, and far more importantly, section 65700, subdivision (a), exempts charter cities from the provisions of chapter 3 ('Local Planning,' beginning with section 65100), division 1, title 7 of the Government Code (excepting the requirement that a city adopt a general plan containing all of the statutorily mandated plan elements) in virtually the same way that section 65803 exempts charter cities from the provisions of chapter 4 of that division and title—and the above provisions of the Government Code relating to specific plans are contained in that chapter 3. Thus, [Riverside] enjoys, even under this analysis, an exemption from consistency requirements unless the same are assumed 'by charter or ordinance'—not 'by remote implication.' " (*Garat*, *supra*, 2 Cal.App.4th at pp. 282-283.)

In *Verdugo*, *supra*, 179 Cal.App.3d 696, the appellate court examined the exemption in section 65803 for consistency of zoning ordinances with the general plan. Although that case involved zoning ordinances, it is persuasive here. The appellate court

24

in *Verdugo* determined that the exemption in section 65803 must be strictly construed. The appellate court concluded, "[I]n the face of clear statutory language exempting charter cities from 'the provisions of this chapter' ['Zoning Regulations'], we cannot say that by implication, the state law concerning consistency may be imposed on City or may be deemed to have been adopted by City when it adopted the state-mandated general plan. Plaintiffs' argument, therefore, must fail in this court." (*Verdugo*, at p. 704.)

The above cases demonstrate that City must have made it clear that the exemption in section 65700 was being rejected by City and that it intended that no specific plan could be adopted that was not consistent with the general plan. Kennedy's attempts to show City adopted the consistency requirement in section 65454 fails.

In reviewing the Huntington Beach zoning ordinance, City did not explicitly state that any specific plan that was not consistent with the general plan was void. chapter 215.02 of the zoning ordinance establishes the specific plan district. It provides, "The SP Specific Plan District is established by this chapter. This district provides areas for the development and administration of specific plans, prepared in accord with the Government Code and consistent with the general plan and, for specific plans located within the coastal zone, the Local Coastal Program." Although this section refers to consistency, it does not adopt the language of section 65454 that "[n]o specific plan may be adopted or amended" unless it is consistent with the general plan. City did not adopt the same requirement that an inconsistent specific plan must be void.

Chapter 201.06 of the zoning ordinance states the purpose of chapter 215.06 as follows, "The purpose of the zoning and subdivision ordinance is to implement the

25

policies of the City of Huntington Beach General Plan, as provided in the California Government Code, Title 7, Division 1, Planning and Zoning, and Division 2, Subdivisions, and in the California Constitution, Chapter 11, Section 7. The purpose of the Local Coastal Program Implementation Plan is to implement the policies of the City of Huntington Beach certified Land Use Plan (Coastal Element) and the public access and recreation policies of the Coastal Act. It is further adopted for the purpose of promoting and protecting the public health, safety, and general welfare of Huntington Beach residents and to provide the physical, economic and social advantages which result from a comprehensive and orderly planned use of land resources. This zoning and subdivision ordinance is not intended to authorize, and shall not be construed as authorizing the City of Huntington Beach to exercise its power in a manner which will take or damage private property for public use. This zoning ordinance is not intended to increase or decrease the rights of any owner of property under the constitution of the State of California or the United States. (3334-6/97)" This is similar to the language in *Garat*, *supra*, that the permits and variances be consistent with the "master plan." While this section refers to the Government Code, it does not precisely require that the specific plan must be consistent with the general plan or it would be void. Further, it does not mandate the single remedy that the specific plan cannot be adopted; City could amend the housing element so that it met the RHNA requirements in lieu of refusing to adopt the amended BECSP.

Additionally, chapter 215.14 of the zoning ordinance provides, "A specific plan adopted by resolution of the City Council shall be administered as prescribed by the

26

Council, consistent with the Government Code, Section 65450 et seq." This is not a declaration that City intended to be subject to the state law and chose to abandon the exemption. The language is ambiguous in that it states the specific plan shall be adopted by the city council and administered by the council first. We cannot imply from this language that City intended that any specific plan that was not consistent with the general plan would be void or could not be adopted. This is a reasonable interpretation as City sought to amend the housing element but keep the amended BECSP. Nothing in the Huntington Beach Charter or zoning ordinances forecloses such a procedure.

Kennedy argues that, "even [if] as a general matter charter cities may be exempt from the requirement of § 65454 that specific plans be consistent with the general plan, if a specific plan is employed to implement a program in the General Plan housing element, it necessarily must conform to that program." In *Verdugo*, the appellate court was concerned that applying the exemption to charter cities would impact the Legislature's ultimate objective of consistency in planning and land use practices. It noted, "We have stated that an exemption is subject to strict, i.e., narrow, construction. It also is true that wherever possible, a statute must be harmonized with other statutes contained in the legislative scheme. [¶] We cannot say that the section 65803 exemption is not applicable in the case at bench, when by its plain language it is. It is applicable in chapter 4, which includes the 'consistency' provision mandating consistency between a community's general plan and its zoning. Defendant City's conduct in digressing from the [Land Use Element] of its general plan to assist defendant Developers squarely falls within the ambit of [a] chapter 4 exemption. While one may question the legislative wisdom in

27

continuing, at this point in time, the leeway granted in 1965 to charter cities, we believe that the trial judge was correct in saying that he could not substitute his will for that of the Legislature." (*Verdugo*, *supra*, 179 Cal.App.3d at pp. 703-704.) Such reasoning equally applies to section 65454.

Kennedy additionally argues that even if the exemption applied, that the amended BECSP should be considered void because once the amendment was adopted the housing element violated state law. However, even if we accepted this as true, the remedy would not be that the amended BECSP was void. Rather, according to section 65750, City should have been granted time to amend its housing element. As noted, City had already submitted an amended housing element to the HCD for approval prior to the trial court's decision in this case. Moreover, the trial court ruled that it would not grant relief on Kennedy's claim that City must implement the housing element in its current state. It was without dispute that City was working with the HCD to have the housing element comply with state law. City was free to amend its housing element to comply with state law while leaving the amended BECSP in place.

Lastly, we note that Kennedy dismissed its causes of action three through six without prejudice, and it was denied relief on the second cause of action. The writ of mandate must be reversed, however Kennedy should be given an opportunity to address the remaining issues.

## DISPOSITION

The superior court's order granting Kennedy's petition for writ of mandate is reversed, and the matter is remanded to the superior court in order for Kennedy to move

28

to have the remaining causes of action three through six reinstated.  If Kennedy does not seek to reinstate the remaining causes of action within 30 days of the issuance of this opinion, the case will be final and the stay issued by this court on May 26, 2016, is ORDERED lifted.  Otherwise, the stay issued by this court on May 26, 2016, is ORDERED lifted when the remittitur in this case is issued.  In the interests of justice, each party shall bear its own costs.[6]

CERTIFIED FOR PUBLICATION


MILLER
Acting P. J.


We concur:


CODRINGTON
J.


FIELDS
J.

---

[6] The City has filed an additional appeal in case No. E066605 addressing the attorney fees awarded to Kennedy.  We address that case by separate opinion.

29